**KEPNER–TREGOE, INC., Plaintiff,**

v.

**EXECUTIVE DEVELOPMENT, INC., Defendant.**

**Civ. No. 97–3473(JAG).**

United States District Court, D. New Jersey.

Dec. 13, 1999.

Carl G. Weisenfeld, Norris, McLaughlin & Marcus, PC, Somerville, NJ, for plaintiff.

Robert J. Stickles, Carpenter, Bennett & Morrissey, Newark, NJ, for defendant.

Peter M. Lancaster, Dorsey & Whitney, LLP, Minneapolis, MN.

Weingarten, Schurgin, Gagnebin & Hayes, LLP, Paul J. Hayes, Dean G. Bostock, Boston, MA.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on the motion for summary judgment filed by defendant, Executive Development, Inc. ("EDI"), pursuant to Fed.R.Civ.P. 56(c), against plaintiff, Kepner–Tregoe, Inc. ("Kepner"). Both parties have submitted affidavits and statements of uncontested facts, pursuant to L.Civ.R. 56.1. For the

following reasons, this Court shall grant EDI's motion for summary judgment.

## INTRODUCTION

This is a copyright infringement action. Kepner specializes in strategic and operational decision-making. Since 1958, Kepner has marketed its management training programs and related instructional materials internationally. Kepner is the owner of, *inter alia*, U.S. Copyright Registration certificate No. A.–550,878 for its instructional materials referred to as GENCO II, and U.S. Copyright Registration certificate No. A–550,880 for its instructional materials referred to as APEX II.

EDI has published one or more works in the United States entitled "DECISION FOCUS". On July 15, 1997, Kepner instituted this action for copyright infringement against EDI, alleging that EDI's DECISION FOCUS materials infringe its registered copyrights for GENCO II and APEX II.

EDI filed its Answer and Counterclaim on September 19, 1997. In its Counterclaim, EDI alleges that Kepner commenced the present action for the purpose of monopolizing commerce in violation of the Sherman Antitrust Act. *See* 15 U.S.C. § 2 (1994).

■ On December 12, 1997, Kepner moved to dismiss EDI's counterclaim or, in the alternative, for summary judgment, on the ground that under the *Noerr–Pennington* doctrine,[1] Kepner is immune from antitrust liability for filing this infringement action. With its reply brief, Kepner submitted the Second Affidavit of Dean G. Bostock. EDI moved to strike that affidavit on the grounds that Kepner raised issues and presented factual material in its

reply brief and accompanying affidavit that it did not raise in its initial brief.

On August 26, 1998, this Court granted Kepner's motion for summary judgment dismissing EDI's counterclaim and denying EDI's motion to strike. On May 17, 1999, EDI filed this motion seeking summary judgment on four separate grounds against Kepner. EDI alleges that each of the four grounds provides an independent and adequate basis for summary judgment regarding Kepner's copyright infringement claims. Specifically, EDI seeks summary judgment because:

(1) Kepner's unexplained and inexcusable delay of more than twenty years before filing this lawsuit over claims that it first asserted back in 1975 bars its claims under well-established laches doctrine;

(2) Kepner's failure to establish any original content in its allegedly copyrighted materials beyond preexisting public domain (and thus unprotectable) materials defeats its claims;

(3) Kepner's failure to produce evidence of EDI either copying or having access to its allegedly copyrighted materials defeats its claims; and because

(4) Kepner's inability to establish the threshold element of any copyright case—what the allegedly copyrighted materials are—defeats its claims.

*See* Def.'s Br. at 1.

## FACTS

In 1958, Drs. Charles Kepner and Benjamin Tregoe founded Kepner. Kepner has been in the business of providing courses that train employees and managers in how to make decisions and how to solve problems that occur in the work-

---

**1.** The *Noerr–Pennington* doctrine exempts from antitrust liability any legitimate use of the courts by private citizens. *See Professional Real Estate Investors, Inc. v. Columbia Pictures, Industries, Inc.*, 508 U.S. 49, 56, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (citing *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

place. Kepner offers its courses throughout the United States and in several other countries. Since its inception, Kepner has created a number of sets of written materials that are used by people who attend Kepner's courses. These materials are protected by copyright, and Kepner has obtained U.S. Copyright Registrations covering the materials.

The copyrighted materials, which Kepner alleges that EDI infringed, constitute those materials used for Kepner's courses known as APEX II and GENCO II. The Copyright Office issued Copyright registration certificates for APEX II and GENCO II in 1974. The only EDI materials, which are the subject of Kepner's infringement claim in this case are EDI's DECISION FOCUS materials and related software. The DECISION FOCUS materials relate to courses on problem-solving and decision-making skills. EDI's DECISION FOCUS materials, which were published in 1985, consist of an eighty-two (82) page participant's manual and related software.

Kepner claims that it obtained a copy of EDI's DECISION FOCUS software in May 1997. Kepner filed this complaint against EDI in July, 1997. Kepner claims further that it first obtained a copy of the DECISION FOCUS manual during discovery in this case. Set forth below is the comparison of Kepner and EDI materials that this court included in its August 26, 1998, dismissal of EDI's antitrust counterclaim:

**KEPNER'S WORKSHEETS**

DECISION ANALYSIS WORKSHEET—
COMPARISON OF ALTERNATIVES

*Decision Statement*

*Objectives*
   *Must*
      *Info Go/No*
   *Want*
*Alternatives*

POTENTIAL PROBLEM ANALYSIS
WORKSHEET

**KEPNER'S WORKSHEETS**
*Specific Potential Problems*
*Likely Causes*
*Prevention —*
   *Take Preventive Action or Accept Risk*
*Protection —*
*Set Contingent Action or Accept Risk*

**KEPNER'S MATERIALS**

SUMMARY OF SITUATION APPRAISAL

*Separate*
*Set Priority or sequence*

SUMMARY OF PROBLEM ANALYSIS

*State the deviation*
*Develop possible causes*
*Test for probable cause*
*Verify*

SUMMARY OF DECISION ANALYSIS

*Establish objectives*
*Compare alternatives*
*Choose the best balanced action*

SUMMARY OF POTENTIAL PROBLEM ANALYSIS

*State the plan*
*Anticipate potential problems*
**EDI'S WORKSHEETS**

DECISION ANALYSIS WORKSHEET

*Decision Statement*

*Criteria*
   *Musts*
      *Info Go/No*
   *Wants*
*Compare Alternatives*

PROBLEM PREVENTION WORKSHEET

*Potential Problems*
*Likely Causes*
*Preventive Actions*
   *(To reduce probability)*
*Contingent Action*
   *(To reduce seriousness)*

**EDI'S MATERIALS**

SITUATION ANALYSIS

*EDI'S MATERIALS*
*Separation*
*Set priority*

PROBLEM ANALYSIS

*Problem statement*
*Possible causes*
*Testing*
*Verification/action*

DECISION ANALYSIS

*Establish criteria*
*Compare alternatives*
*Best choice*

PROBLEM PREVENTION

*Planning statement*
*Potential problems*

Order signed by the Honorable Joseph A. Greenaway Jr., dated August 25, 1998, and filed August 26, 1998, (quoting Bostock Decl., vol. two, Ex. 10, at 8–9) dismissing EDI's counterclaim.

EDI contends that as early as 1975, Kepner accused Millard Robert Guberud ("Guberud")[2] and EDI (then called Training Associates, Inc.) of copyright infringe-

ment. Specifically, EDI claims that in 1975, Kepner alleged that EDI was "teaching courses on decision-making and problem analysis which infringed directly and blatantly on [Kepner-owned] copyrights." Def.'s Br. at 6. In response to Kepner's allegation, EDI requested promptly that Kepner identify which EDI materials violated Kepner copyrights. *See id.* An exchange of correspondence ensued. *See id.*

By letter dated May 28, 1975, EDI sent to Kepner's counsel, Mr. Jaffin ("Jaffin"), its then-current SITUATION MANAGEMENT materials.[3] In a follow-up telephone conversation between EDI's lawyer, Mr. Johnson ("Johnson"), and Jaffin, Jaffin confirmed that he had received the SITUATION MANAGEMENT materials. Kepner alleges that Jaffin notified EDI that Kepner had concerns regarding EDI's SITUATION MANAGEMENT materials.

EDI contends that neither Johnson nor anyone else at EDI heard any further complaints from Kepner until 1996—a period of more than twenty years. EDI claims further that Kepner's silence of twenty years led EDI to conclude that

---

**2.** Guberud is the co-author of the DECISION FOCUS materials. In 1968, Guberud signed a one-year non-compete agreement with Kepner before beginning employment with Kepner. From 1968 to 1971, Guberud conducted workshops and sold products for Kepner. When Guberud joined Kepner, he had nearly twenty years of sales and marketing experience at other companies. While working for Kepner, Guberud used three types of Kepner materials: the book, *The Rational Manager*, (Charles H. Kepner & Benjamin B. Tregoe, (McGraw–Hill Book Co.1965)), teaching materials, and results planning manuals used by the students. Guberud claims that following his 1971 resignation from Kepner, he did not retain any Kepner teaching materials or manuals. He admits that he kept a copy of *The Rational Manager*, which he contends was publicly available for many years at bookstores. Guberud claims that he has never reviewed or possessed any Kepner materials generated after 1971.

Guberud's resignation from Kepner triggered the beginning of a one-year non-compete period that expired in 1972. The non-compete agreement forbade Guberud from offering problem-solving and decision-making materials and services if such materials and

services were "similar to KEPNER–TREGOE products and services and [were] based upon the distinctive concepts, course materials or methods of presentation utilized by KEPNER–TREGOE." Lancaster Decl., Tab D at D–37.

In 1975, Guberud founded Training Associates, Inc., ("Training Associates") (since renamed Executive Development, Inc. ("EDI")). Training Associates provided educational services in the analytical problem-solving/decision-making field. Guberud alleges that he created the SITUATION MANAGEMENT materials in 1975. In December 1983, Guberud's daughter, Mary Osgood joined EDI as the Director of Marketing. He alleges that from 1983–1991, he and Mary updated the SITUATION MANAGEMENT materials. He claims further that he and Mary did not look at any Kepner material when they updated SITUATION MANAGEMENT. Guberud is no longer employed by EDI.

**3.** Kepner points out that the 1975 publication of Training Associates, Inc. entitled "SITUATION MANAGEMENT", on which EDI bases its laches argument, is not the subject of Kepner's infringement claim.

Kepner had no objection to EDI's SITUATION MANAGEMENT materials. According to EDI, the SITUATION MANAGEMENT materials include all of the same concepts and virtually all of the same expressions about which Kepner now complains.

Specifically, EDI claims that both sets of materials combine four modules successively devoted to situation analysis, problem analysis, decision analysis, and problem prevention. EDI asserts that its current materials include worksheets for problem-solving, decision-making, and problem-prevention that parallel those used in connection with EDI's 1975 publication. EDI claims further that Kepner has not identified any infringing expression in current EDI materials that is not similar to the expression in EDI's 1975 materials.

EDI argues that it has made many decisions and taken numerous actions since 1975 in reliance upon its understanding that Kepner's two-decade silence meant that Kepner did not object to EDI's SITUATION MANAGEMENT and DECISION FOCUS materials. In addition, EDI argues that the services offered with the SITUATION MANAGEMENT and DECISION FOCUS materials since 1975 have constituted between 60% and 100% of EDI's revenues. Moreover, David and Mary Osgood, the two current principals of EDI, argue that they would not have devoted their careers to building a business based primarily on the DECISION FOCUS materials had Kepner successfully pursued its claims of infringement in 1975.[4] Furthermore, EDI contends that it has committed itself recently to contractual and other obligations to provide services based upon the DECISION FOCUS materials. Specifically, EDI claims that it invested over $300,000 to develop and update software based upon the DECISION FOCUS materials.

EDI argues that Genco II and Apex II are public domain expressions. EDI points out that the Copyright Registration Certificate for Genco II No. A–550,878, cites "previously published and copyrighted works collectively entitled 'Genco' ". EDI points out further that the Copyright Registration Certificate for Apex II, No. A–550,880, cites "previously published and copyrighted works collectively entitled 'Apex.' "

EDI argues that among the works pre-existing the materials on which Kepner bases this case, are two works published in 1963 (the "1963 Works") entitled "Genco Instructor's Guide—Problem Analysis," and "Genco Instructor's Guide—Decision Making and Control," registered pursuant to Copyright Nos. A–807,007 and A–807,008, respectively. EDI claims that Kepner has not produced a copy of the 1963 Works.

In addition, EDI contends that the material registered pursuant to Copyright Registration No. A–804,007, was first published on or about January 19, 1963. EDI argues also that the material registered pursuant to Copyright Registration No. A–804,007, was published without copyright notices in the form prescribed by applicable law. EDI claims further that Copyright Registration No A–804,007 was not renewed. EDI reasons that upon the failure to renew Copyright Registration No. A–804,007, the material formerly protected by Copyright Registration No. A–804,007 passed into the public domain.

---

**4.** EDI President Mary Osgood, who has devoted fifteen (15) years, most of her working career, to EDI, claims that she would not have given up another job to join a company lacking what was then its sole product—SITUATION MANAGEMENT. In addition, in 1991, EDI Vice President David Osgood left a position, in which he supervised 250 employees, earned higher pay, and held health insurance covering a serious medical condition, to pursue the entrepreneurial opportunity to build a business around the DECISION FOCUS product. He claims that he would never have done so if Kepner had acted promptly and successfully on its 1975 claims.

Furthermore, EDI states that the material registered pursuant to Copyright Registration No. A–804,008, was first published on or about June 11, 1963. EDI claims that this material also was published without copyright notices in the form prescribed by applicable law. EDI claims further that Copyright Registration No. 804,008 was not renewed. Upon the failure to renew Copyright Registration No. A–804,008, EDI reasons that the material formerly protected by Copyright Registration No. A–804,008 passed into the public domain. In addition, EDI alleges that Kepner cannot identify any expression by defendant that (a) infringes any expression in Copyright Registration Nos. A–550,878 or A–550,880 and that (b) is not also contained in the material registered pursuant to Copyright Registration Nos. A–804,007 and A–804,008. Moreover, EDI claims that before this case, none of the authors associated with the creation of any EDI materials ever saw, possessed, or copied Kepner's 1973 allegedly copyrighted materials, or any other Kepner materials that were generated after Guberud left Kepner in 1971.

In sum, EDI claims that Kepner has not produced any admissible evidence of what the allegedly copyrighted 1973 materials are, and Kepner has not produced original evidence establishing what Kepner, in fact, submitted to the Copyright Office in 1974. In addition, EDI contends that Kepner's counsel has identified multiple documents on different occasions that are claimed to be the copyrighted materials.

EDI argues further that Kepner's delay of more than two decades in bringing its claims has affected the availability of evidence. EDI contends that proving how it developed its materials now is more diffi-cult than it would have been had this case occurred in 1975 or 1976, shortly after EDI created the SITUATION MANAGEMENT materials. Specifically, EDI claims: (1) that it lacks drafts and other evidence, including a thesaurus, showing how EDI developed its materials; (2) that Kepner cannot produce any knowledgeable witnesses about how Kepner's own materials were developed and what part of them, if any, is original; (3) that Kepner has destroyed or lost the pre-existing materials that would show what, if anything, is original about the materials on which it rests this case, including pre-existing copyrighted material; and (4) that Kepner cannot produce any knowledgeable witnesses about the 1975 exchange between the parties. Additionally, EDI asserts that its open advertising and the sale of its products gave Kepner an opportunity to analyze any alleged infringement prior to 1997.[5]

Kepner, however, alleges that it first obtained a copy of EDI's DECISION FOCUS materials in 1997. Thus, because Kepner filed this complaint against EDI in July 1997, Kepner reasons that it did not delay twenty years before asserting its DECISION FOCUS infringement claim against EDI.

Kepner bases its lawsuit on the claim that its copyrighted materials, Genco II and Apex II, and EDI'S accused DECISION FOCUS materials are strikingly similar. Kepner accuses EDI of having had access to Kepner's works and having copied said work in violation of the copyright laws. Kepner states that the subject of its copyright claim is EDI's problem solving materials entitled DECISION FOCUS, and *not* EDI's 1975 SITUATION MANAGEMENT publication.

---

**5.** EDI points out that plaintiff has instituted at least the following suits in the past twenty years: *Kepner–Tregoe, Inc. v. General Electric Co.*, No. 97–3758 (D.N.J.) (compl. undated, filed 1997); *Kepner–Tregoe, Inc. v. Action Management Associated, Inc.*, No 94–1310 (D.N.J.) (compl. filed Mar. 17, 1994); *Kepner–Tregoe, Inc. v. Eastman Kodak Co., Inc.*, No. 93–1415 (D.N.J.) (compl. filed Apr. 5, 1993); *Kepner–Tregoe, Inc. v. Corning Inc.*, No. 91–335 (D.N.J.) (compl. filed Jan. 23, 1991); *Kepner–Tregoe, Inc. v. Ford Motor Co.*, No. 88–2385 (D.N.J. Oct.17, 1988) (Debevoise, J.); and *Kepner–Tregoe, Inc. v. Carabio*, 203 U.S.P.Q. 124 (E.D.Mich.1979).

Specifically, Kepner notes that EDI's laches argument is based upon the twenty (20)—page Training Associates 1975 publication entitled SITUATION MANAGEMENT. Kepner notes further that there are no pages in EDI's DECISION FOCUS materials, published in 1985, that can be found in EDI's SITUATION MANAGEMENT materials published in 1975. According to Kepner, the DECISION FOCUS materials did not exist twenty years ago. As stated above, EDI's first version of the DECISION FOCUS Software was not released until 1995. Kepner contends also that EDI never informed Kepner that EDI had stopped selling the 1975 SITUATION MANAGEMENT materials and had introduced in their place the DECISION FOCUS material.

Kepner's version of the 1975 exchange between Kepner and EDI is different than EDI's version. Kepner's version relates as follows: On April 15, 1975, Jaffin wrote to Johnson alleging infringement of Kepner's copyrights; on April 23, 1975, Johnson replied and denied any infringement; Jaffin then responded on May 8, 1975, and attached numerous examples of Kepner's copyrighted materials compared with the infringing materials then being used by EDI; and in response to Jaffin's side-by-side evidence of infringement, Johnson wrote to Jaffin on May 28, 1975, and represented as follows:

1. "The [infringing] material referred to in Exhibits 1, 2, 3 and 4 of the appendix attached to your [May 8, 1975] letter is not in use."

2. "On the occasion which [EDI] conducts situation management training, [EDI] uses [the 1975 SITUATION MANAGEMENT materials] in the form enclosed." Pl.'s Statement of Material Facts at 5.

Kepner states that Jaffin spoke with Johnson on June 4, 1975, because Jaffin "wanted to be sure" that the earlier material "was no longer in use." Pl.'s Statement of Undisputed Facts at 5. Kepner states further that Johnson represented to

Jaffin that "that was the case". *Id.* According to Kepner, as of 1975, the only material being used by EDI, that was disclosed to Kepner, was the 1975 SITUATION MANAGEMENT publication. Kepner states that EDI stopped using the 1975 SITUATION MANAGEMENT materials in 1985.

In 1985, EDI wrote the first version of the DECISION FOCUS materials. Kepner alleges that the DECISION FOCUS materials bear a copyright date of 1985 and that EDI introduced them in 1985. Kepner claims further that before EDI introduced the first version of the DECISION FOCUS materials in 1985, EDI did not notify Kepner of DECISION FOCUS' introduction into the market. Kepner alleges further that neither EDI's principals nor Johnson informed Kepner that the representations in Johnson's letter dated May 28, 1975, were inaccurate by then because EDI was no longer using the 1975 materials.

Likewise, in spite of the change in materials, Kepner claims that EDI did not forward to Kepner a copy of the DECISION FOCUS materials for review. Kepner states that it would have claimed infringement in 1985 if EDI had provided Kepner with the DECISION FOCUS materials at that time.

Kepner contends that on May 8, 1975, Jaffin wrote to Johnson and repeated Kepner's infringement allegations, annexing to the letter specific examples of infringement. On May 28, 1975, Johnson responded in writing and represented that the infringing materials annexed to Jaffin's May 8, 1975, letter *were no longer in use*. *See id.* at 6. Kepner states that those infringing materials were redacted from the 1975 SITUATION MANAGEMENT materials sent to Kepner by Johnson on May 28, 1975.

Kepner claims that EDI never informed Kepner that it had incorporated Kepner's copyrighted material into the DECISION FOCUS materials. Kepner argues further

that the statements of EDI's principals—that EDI built its business around the EDI materials that they reasonably understood were not objectionable to Kepner—lack credibility. Kepner attempts to support this allegation by reiterating that EDI never gave its DECISION FOCUS materials to Kepner for review.

In addition, Kepner notes that EDI has not changed the DECISION FOCUS materials since Kepner commenced this civil suit in July, 1997. Kepner states that it is therefore unlikely that EDI would have removed the DECISION FOCUS materials from the market in response to a letter from Kepner in 1985. Kepner argues further that Guberud's statement that due to the passage of time resulting from Kepner's alleged delay, he cannot recall how the DECISION FOCUS materials were developed, is not credible. Specifically, Kepner argues that Guberud's memory is self-serving and selective. Kepner states that "[w]hile EDI now argues that Mr. Guberud's memory regarding the development of the materials is faded, Mr. Guberud conveniently had a clear memory in [his] deposition that he allegedly never copied any [Kepner] material when the DECISION FOCUS manual was written." Pl.'s Br. at 16.

Kepner contends that the DECISION FOCUS materials were written in 1985, i.e., six years before EDI alleges that the Kepner 1963 Works went into the public domain. Both EDI's principals deny copying from the Kepner material. Kepner points out, however, that the 1963 Works were not in the public domain as of 1985. Kepner contends that Kepner's 1963 Works are not the subject of its claims in this case, and that the copyright registrations for the works at issue (Genco II and Apex II) are currently in full force and effect.

Kepner claims that it cannot produce a copy of the 1963 Works because the copies are now over thirty-five (35) years old and neither Kepner nor the copyright office can locate a copy. Kepner states that it filed copies of the 1963 Works and that the copyright registration certificates themselves confirm this assertion.

Kepner claims further that it obtained copyright registrations for the Genco II and Apex II materials, which are the subject of the claims in this case, before the date (1991) on which EDI argues that the two 1963 Works entered the public domain. Kepner states that it did not routinely or deliberately destroy its copyrighted materials. In fact, Kepner contends that it is Kepner's practice to copyright its materials by placing a copyright notice on at least the front page of its documents.

EDI's witnesses testified that they did not copy Kepner's 1963 Works. Kepner notes, however, that the comparisons set forth herein and described on pages 153 – 180 of Kepner's current general counsel Theodore F. Hiller's ("Hiller")[6] deposition show a striking similarity between Kepner's copyrighted materials and the DECISION FOCUS material. Thus, Kepner alleges that EDI's access to Kepner's materials can be inferred.

Kepner contends that the striking similarity between the DECISION FOCUS materials and Kepner's copyrighted materials was not "independently created", but resulted from EDI's access to the Genco II and/or Apex II materials. According to Kepner, Guberud has been in the training business for over twenty (20) years since he left Kepner. Kepner's Genco II and Apex II materials have been widely distributed to Kepner's clients throughout the United States.

---

**6.** Hiller joined Kepner in 1977 as an accountant and as the director of taxes. Hiller is still the director of taxes at Kepner. Hiller has been employed as Kepner's general counsel since 1988, and was Kepner's first general counsel. Kepner's legal team has one other attorney, Thomas Irwin, who joined the company in April 1998, as assistant general counsel. In addition to being general counsel and director of taxes, Hiller is also Secretary of Kepner.

In addition, Kepner claims that some of EDI's clients are current or former clients of Kepner, whom Kepner provided with the Genco II and/or Apex II materials. Kepner alleges that Guberud, and/or his co-author Mary Osgood, had access to the Genco II and Apex II materials at the time they wrote the DECISION FOCUS materials.

Kepner states that a comparison of DECISION FOCUS and the Kepner materials demonstrates that the DECISION FOCUS materials are not a work of independent creation. Kepner argues that EDI has helped itself intentionally to the expression contained in Kepner's copyrighted materials. Specifically, Kepner points out that at his deposition, Hiller, in response to a request from EDI's counsel, went through each page of the DECISION FOCUS materials and identified the copied portions during his deposition. *See* Pl.'s Br. at 26. Kepner's interrogatory responses identify further instances of copying by EDI. Kepner's two copyright registrations at issue are Nos. A 550,878 and A 550, 880. Kepner claims that copies of these copyright registration certificates were produced to EDI during discovery. In addition, Kepner produced to EDI copies of the Genco II and Apex II materials covered by these two registrations. *See* Bostock Decl., Exs. 3 and 4. The respective first pages of exhibits three (3) and four (4), duplicate the cover letters from the Copyright Office, which state that they are certified copies of the materials submitted to the Copyright office with the two copyright registration applications. *See id.* The copies of the materials are stamped with the same registration number that is printed on their respective copyright registration certificates.

Furthermore, the titles of exhibits three (3) and four (4) match the titles found on the copyright registration certificates. Kepner contends that it has not only identified the APEX II and GENCO II copyrighted materials to EDI, but also has produced to EDI copies of those materials. The copy of Kepner's materials that the Copyright office received is plainly marked with the Copyright Office certification. Kepner states that it explicitly identified the Copyright Office's copies of these materials to EDI.

In sum, Kepner alleges that EDI's DECISION FOCUS materials infringe Kepner's works, GENCO II AND APEX II, which relate to problem-solving and decision-making. Kepner contends that EDI purposefully concealed the DECISION FOCUS materials from Kepner. Kepner claims that EDI knew that Kepner would have alleged infringement had EDI disclosed the DECISION FOCUS materials to Kepner. Kepner alleges that because EDI did not rely in any manner upon any conduct of Kepner in introducing and marketing the DECISION FOCUS materials, EDI has suffered no harm. Finally, Kepner submits, that in view of the striking similarity between the copyrighted and contested materials, EDI's denials of access and copying constitute disputed factual questions that should be resolved by the jury.

## DISCUSSION

### COPYRIGHT INFRINGEMENT

■ This case raises a federal copyright question, bestowing upon this Court subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1338. To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying[7] of constituent elements of the work that are original" by the defendant. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358

---

**7.** "Copying is a 'shorthand reference to the action of infringing any of the copyright owners five exclusive rights set forth at 17 U.S.C. § 106.'" *Ford Motor Co. v. Summit Motor*

*Prods., Inc.*, 930 F.2d 277, 291–92 (3d Cir. 1991) (quoting *Paramount Pictures Corp. v. Video Broadcasting Systems*, 724 F.Supp. 808, 819 (D.Kan.1989)).

(1991) (citation omitted); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977); *Database Am., Inc. v. Bellsouth Adver. & Publishing Corp.*, 825 F.Supp. 1216, 1225 (D.N.J.1993) (citing *Feist Publications*, 499 U.S. at 361, 111 S.Ct. 1282). Kepner, therefore, must prove first that it owns a valid copyright protecting the expression claimed to be infringed. "Without proper copyright protection any infringement claim is moot and summary judgment rejecting the alleged infringement claim is appropriate." *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 853 F.Supp. 319, 321 (N.D.Cal.1994) *aff'd*, 122 F.3d 1211 (9th Cir.1997), *cert. denied*, 523 U.S. 1021, 118 S.Ct. 1302, 140 L.Ed.2d 468 (1998).

■ EDI disputes both the ownership and validity of Kepner's copyrights for the purpose of this motion.[8] Copyright Registration Certificates, however, "issued by the U.S. Copyright Office comprise prime facie evidence of the validity and ownership of the material." *Ford Motor Co.*, 930 F.2d at 290–91 (citing *Andrien v. Southern Ocean County Chamber of Commerce*, 927 F.2d 132, 134 (3d Cir.1991); *Williams Elec., Inc. v. Artic Int'l, Inc.*, 685 F.2d 870, 873 (3d Cir.1982)).

Second, after Kepner successfully proves that it owns a valid copyright, Kepner must prove that EDI copied original parts of Kepner's work. Typically, direct evidence of copying is rarely available. Courts, therefore, allow plaintiffs to infer copying "by showing that the defendant had access to the allegedly infringed work, ... that the allegedly infringing work is substantially similar to the copyrighted

work, and ... that one of the rights guaranteed to copyright owners by 17 U.S.C. § 106[9] is implicated by the defendant's actions." *Ford Motor Co.*, 930 F.2d at 291 (internal citations and quotations omitted).

■ The two prevailing tests used to determine "substantial similarity," must each be satisfied. *See Whelan Assoc., Inc. v. Jaslow Dental Lab. Inc.*, 797 F.2d 1222, 1232 (3d Cir.1986). First is the "extrinsic test," which queries "whether there is sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own." *Id.* To satisfy this test, expert testimony and a visual comparison between both the allegedly infringing work and the copyrighted work are often employed. *See Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir.1975).

The second test of the "substantial similarity" inquiry is called the "intrinsic test," and it queries, from a lay perspective, whether the copying was an unlawful appropriation of the copyrighted material. *Whelan Assoc.*, 797 F.2d at 1232; *See Universal Athletic Sales Co.*, 511 F.2d at 907. "Unlawful appropriation" is "a taking of the independent work of the copyright owner which is entitled to the statutory protection." *Universal Athletic Sales Co.*, 511 F.2d at 907. When determining whether an appropriation has occurred, the analysis should consider "the nature of the protected material and the setting in which it appears." *Id.* at 908. Thus, copying is established when a person who has access to the copyrighted material uses material substantially similar to the copy-

---

8. EDI's second ground for summary judgment is that Kepner's works rest in the public domain, and are therefore unprotectable expressions that are free for the world to use. Specifically, EDI attacks the ownership and validity of the GENCO II and APEX II copyright registration certificates by alleging that Kepner's materials are unprotectable derivative works.

9. Section 106 of the Copyright Act states in relevant part:

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords; [and]
(2) to prepare derivative works based upon the copyrighted work.
17 U.S.C. § 106 (1994).

right work in a manner that interferes with a right protected by 17 U.S.C. § 106.

Congress, however, mandated that no copyright protection can be claimed for any "idea, procedure, process, system, method of operation, concept, [or] principle, regardless of the form in which it is described, explained [or] illustrated." 17 U.S.C. § 102(b) (1994). In addition, the Third Circuit has held that similarities in expression will not establish infringement under certain circumstances:

> A copyright does not cover an idea or a system of doing business but only the particular mode of expression of the idea embodied in the copyrighted material. The public is free to use the idea or method of doing business and hence, while the copyrighted description of the idea may not be slavishly copied, the copyright is not infringed by an expression of the idea which is substantially similar where such similarity is necessary because the idea or system being described is the same.

*Universal Athletic Sales Co.,* 511 F.2d at 908 (citation omitted). Furthermore, the Supreme Court of the United States has held that "[n]ot all copying ... is copyright infringement." *Feist Publications,* 499 U.S. at 361, 111 S.Ct. 1282. In that case, the Court determined that the defendant's admitted taking of "substantial amounts of factual information" from the plaintiff failed to establish infringement. *Id.*

The Copyright Office has explicitly stated that, although they may constitute "expression," "[w]ords and short phrases such as names, titles, and slogans" are unprotectable. 37 C.F.R. § 202.1(a); *see, e.g., Becker v. Loew's Inc.,* 133 F.2d 889 (7th

Cir.1943) (denying protection to phrase: "We who are young"); *Warner Bros. Pictures, Inc. v. Majestic Pictures Corp.,* 70 F.2d 310 (2d Cir.1934) (finding phrase "Gold Diggers" uncopyrightable); *Magic Mktg. Inc. v. Mailing Svcs. of Pittsburgh Inc.,* 634 F.Supp. 769, 772 (W.D.Pa.1986) ("Terse phrases ... [and] even more colorful descriptions ... are not accorded copyright protection".)

The federal courts have previously faced Kepner's allegations of copyright infringement regarding the same materials at issue in this case. In *Kepner–Tregoe v. Carabio,* the court held that the worksheets relied upon by Kepner in this case "contain so little expression and there is so much difficulty separating the expression from the idea; the protection they enjoy extends little beyond xerographic reproduction." 203 U.S.P.Q. at 133.[10] In *Kepner–Tregoe v. Ford,* No. 88–2385, Judge Debevoise analyzed the same materials on which Kepner now bases its claims and granted Kepner some preliminary injunctive relief, but denied its claims of broad rights. Judge Debevoise rejected entirely Kepner's claims of infringement of its worksheets. Relying on *Carabio,* he described a very narrow range of protection granted to works like those, which Kepner claims are infringed in this case:

> The special problems involved with instructional materials of this nature are addressed in *Carabio.* There the court dealt with similar [Kepner] material and noted that the substantial similarity test must be applied with an eye to the subject matter in issue. In literary works, where there is a wide range of ways to give expression to the content of the material, less similarity is needed to

---

10. Professor Nimmer notes that "if the only original aspect of a work lies in its literal expression, then only a very close similarity, verging on the identical, will suffice to constitute an infringing copy." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][2][b] at 13–64 to 13–65 (1999) (citing *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 491 (9th Cir.

1985)); *Concord Fabrics, Inc. v. Generation Mills, Inc.,* 328 F.Supp. 1030, 1033 (S.D.N.Y. 1971); *National Presto Industries, Inc. v. Hamilton Beach, Inc.,* 1990 WL 208594, 18 U.S.P.Q.2d 1993, 1997 (N.D.Ill.1990); *Lauratex Textile Corp. v. Citation Fabrics Corp.,* 328 F.Supp. 554 (S.D.N.Y.1971); *see also Carabio,* 203 U.S.P.Q. at 130 (citing Professor Nimmer for same assertion).

suggest copying. In materials describing a useful art or scientific or other process, the ideas themselves cannot be copyrighted and there are fewer ways available to express these ideas than in the case of literary works. Thus considerable similarity may be tolerated without giving rise to an inference of copying simply because there are only limited ways to express the same ideas or to explain the process.

*Kepner–Tregoe v. Ford,* No. 88–2385 at 15. The court noted also that "[Kepner] cannot prevent others from teaching the processes which it teaches. Some similarity of language is inevitable...." *Id.* at 16. Judge Debevoise concluded that

there are only limited ways in which these questions can be asked, that the questions and the sequence are necessary to teach the thought process involved and that, therefore, the similarities are not such as to suggest an inference of impermissible copying. (Looking at the situation in another way, it might be said that the questions themselves are not copyrightable).

*Id.* at 18 (citing *Carabio,* 203 U.S.P.Q. at 129–30).

### STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact, and the evidence establishes the moving party's entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *See Jersey Cent. Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere

allegations, but rather, must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995); *Sound Ship Bldg. Corp. v. Bethlehem Steel Co.,* 533 F.2d 96, 99 (3d Cir.1976). In determining whether there are any issues of material fact, the court must resolve all reasonable doubts as to the existence of a material fact against the moving party. *See Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972).

### I. Laches

■■■■ EDI first moves for summary judgment on the grounds of laches. Laches is an equitable doctrine and grants the court flexibility, "eschewing mechanical rules." *Waddell v. Small Tube Prods., Inc.,* 799 F.2d 69, 79 (3d Cir.1986). In New Jersey, laches contains two essential elements: "(1) inexcusable delay in instituting suit; and (2) prejudice resulting to the defendant from such delay." *Central Penn. Teamsters Pension Fund v. McCormick Dray Line, Inc.,* 85 F.3d 1098, 1108 (3d Cir.1996); *University of Pittsburgh v. Champion Prods., Inc.,* 686 F.2d 1040, 1044 (3d Cir.1982). The duty to bring an action for copyright infringement does not arise, however, until the plaintiff knows of the infringement. *See MacLean Assoc., Inc. v. William M. Mercer–Meidinger–Hansen, Inc.,* 952 F.2d 769, 780 (3d Cir. 1991). The Third Circuit has recognized that laches provides a defense to copyright claims, just as it does for other types of claims. *See id.* at 780–81. The Third Circuit, however, has held that a laches defense "is rarely subject to summary judgment". *Waddell,* 799 F.2d at 74 n. 2 (citations omitted).

In addition, "[s]ummary judgment is inappropriate when a case will turn on credibility determinations." *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3d Cir.1993) (citing

*Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.) As the moving party, EDI has the burden of proving the elements of laches. *See Waddell,* 799 F.2d at 74. This court, therefore, must determine whether there are disputed questions of fact regarding EDI's laches argument which should be resolved by a jury.

### a. Inexcusable Delay

Based upon the following, this Court concludes that Kepner's delay was unreasonable and inexcusable.

EDI alleges that Kepner has delayed bringing this suit for two decades. EDI asserts that Kepner's delay is inexcusable. Specifically, EDI accuses Kepner of trying to destroy EDI, because EDI has become a major competitive threat to Kepner. EDI claims that Kepner's two-decade delay began in 1975, when Kepner first accused EDI of infringing its SITUATION MANAGEMENT copyrights, and Kepner's and EDI's attorneys discussed Kepner's accusations. Kepner failed to take any legal action that year. Kepner does not deny that it made the infringement accusation in 1975. Moreover, Kepner concedes that the "infringing materials were redacted from the 1975 SITUATION MANAGEMENT materials sent to [Kepner] by [EDI] on May 28, 1975." Pl.'s Statement of Undisputed Facts at 6.

EDI states that Kepner identifies only five words by which EDI's current materials appear closer to Kepner's 1973 materials than did EDI's 1975 expression: "Analysis," "Decision," "Statement," "Must," and "Wants." EDI alleges also that its current worksheets are the same as EDI's 1975 worksheets. Moreover, EDI claims that Kepner has not identified any expression contained in current EDI materials that is not similar to any expression in EDI's 1975 materials. In addition, EDI states that Kepner's own witness conceded that two of those five words—"must" and "wants"—are not original to Kepner at all and, thus, provide no basis for copyright protection, because copyright law protects only original expression. *See* Lancaster Decl. Tab. B at 104.

EDI contends that its DECISION FOCUS materials are not an entirely new work, but are merely expanded and updated versions of EDI's 1975 SITUATION MANAGEMENT.[11] Bringing the point home, regarding the worksheets, EDI demonstrates that EDI's charts (set out in italics) show ways in which *EDI's 1975 work was closer to Kepner's 1973 materials than are EDI's current works:*

| Kepner's Worksheets | EDI's Current Worksheets | EDI's 1975 Worksheets |
|---|---|---|
| Objectives | Criteria | *Objectives* |
| Alternative | Compare Alternatives | *Alternative* |
| States the deviation | Problem statement | *State ... what is wrong* |
| Verify | Verification/action | *Verify* |
| Establish objectives | Establish criteria | *Establish objectives* |
| State the plan | Planning statement | *State your plan* |

Def.'s Reply Br. at 2–3.

EDI asserts that the above examples rebut Kepner's assertion that EDI's current materials are some newly infringing work. *See id.* at 3. In fact, the above materials show that EDI's current materials are less infringing than the Kepner-approved 1975 material.

Kepner claims, however, that the subject of its copyright claim is EDI's eighty-two (82) page problem solving manual entitled DECISION FOCUS, and not the twenty (20) page Training Associates 1975 publication entitled SITUATION MANAGEMENT. Kepner claims that, after obtaining EDI's software, it acted promptly in instituting suit against EDI. According to Kepner, EDI's laches argument is based upon materials that are not the subject matter of Kepner's copyright claim. In addition, Kepner argues that the SITUATION MANAGEMENT materials are a substantially different set of materials as

---

11. EDI points out that, from EDI's first page forward in both DECISION FOCUS and SITUATION MANAGEMENT, the works share the same four problem solving/decision making modules, in the same order, with substantially the same process steps, graphics, and end results.

compared with the DECISION FOCUS manual.

Kepner states that in 1975 it relied on EDI's representations of Jaffin that EDI's earlier material "was no longer in use." Kepner argues next that "in view of this awareness of [Kepner's] concerns regarding infringement, and in view of its 1975 representation to Kepner, EDI should have disclosed the new materials to Kepner in 1985 so that the issue could have been resolved at that time." Pl.'s Br. at 12. Specifically, Kepner contends that EDI failed to fulfill this purported responsibility by not informing Kepner that EDI had replaced its discontinued 1975 materials with the DECISION FOCUS materials. Kepner, however, provides no example of a "company in any competitive business [that must] send[ ] its new work product to its competitors for their review." Def.'s Reply Br. at 6. Furthermore, Kepner fails to cite a single case or statute which places such an illogical onus on a business enterprise. *See* Pl.'s Br. *passim;* Pl.'s Reply Br. *passim.*

In fact, the law mandates that Kepner's prior 1975 infringement charge places a duty on *Kepner to monitor EDI's products* and to bring suit promptly if it objected to the 1985 change to DECISION FOCUS. *See Wanlass v. General Elec. Co.,* 148 F.3d 1334, 1338, 1340–41 (Fed.Cir.1998) (recognizing dual burdens of complainants "to police their rights" and to raise infringement claims expediently); *Hall v. Aqua Queen Mfg., Inc.,* 93 F.3d 1548, 1552–53 (Fed.Cir.1996) (finding that, where complainant operated as an active and central competitor in its field for at least eight years, it "knew or should have known of [alleged infringer's] activities," and, therefore, laches barred its claims neglected for six years); *Altech Controls Corp. v. E.I.L. Instruments, Inc.,* 33 F.Supp.2d 546, 554 (S.D.Tex.1998) ("[M]arketing, publication, or public use of a product similar to [the protected work] . . . give rise to a duty to investigate [the possibility of infringe-

ment].") (citing *Wanlass,* 148 F.3d at 1338).

Kepner failed to monitor EDI following its 1975 infringement allegations. In the ensuing quarter century, EDI published, promoted, and sold its materials in the public domain, making discovery by Kepner a reasonable expectation—especially in light of the fact that the two companies competed within a highly specialized service industry. Indeed, "a reasonable [copyright holder], motivated by his interest in recovering for and preventing infringement, keeps abreast of the activities of those in his field of endeavor." *Wanlass,* 148 F.3d at 1339; *see A.R. Mosler & Co. v. Lurie,* 209 F. 364, 371 (2d Cir.1913) (barring infringement suit where complainants lay "supine for many years, shutting their eyes to what was going on [within their field]"). Furthermore,

constructive knowledge of the alleged infringer's activities imposes on [the parties seeking copyright protection] the duty to police their rights. "[T]he law is well settled that where the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."

*Id.* at 1338 (quoting *Johnston v. Standard Mining Co.,* 148 U.S. 360, 370, 13 S.Ct. 585, 37 L.Ed. 480 (1893) (alteration in original)). This Court concludes that the facts known by Kepner in 1975, particularly regarding EDI's SITUATION MANAGEMENT materials, placed a duty of further inquiry squarely upon its shoulders.

As noted, the law conjoins a duty to bring suit promptly with this duty to monitor. *See Wanlass,* 148 F.3d at 1340–41. Kepner's unjustified delay in seeking protection of its copyrights dooms the instant claims, for Kepner should have known of EDI's alleged infringement in 1985, or soon thereafter, and "delay begins when the plaintiff knew, or in the exercise of reasonable diligence should have known, of

the defendant's allegedly infringing activity." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed.Cir. 1992) (en banc); *see Wanlass*, 148 F.3d at 1338 (quoting same). Furthermore, delays as short as three and six years in bringing copyright infringement actions have been held inexcusable by both the Third Circuit and the District of New Jersey, respectively. *See Edwin L. Wiegand Co. v. Harold E. Trent Co.*, 122 F.2d 920, 925 (3d Cir. 1941) (affirming dismissal of copyright infringement clam for laches after three-year delay); *Certified Eng'g, Inc. v. First Fidelity Bank, N.A.*, 849 F.Supp. 318, 325 (D.N.J.1994) (applying laches to bar claim left fallow for six years). Kepner's fourteen-year disregard for its own interests epitomizes the apathy and inattention which laches declines to defend.

A recent Seventh Circuit case reinforces the propriety of applying laches to bar Kepner's instant claims. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 27 F.Supp.2d 1043 (N.D.Ill.1998), *aff'd*, 191 F.3d 813 (7th Cir.1999). While *Hot Wax* involved trademark rather than copyright claims, it addressed forthrightly the issues raised here. In *Hot Wax*, as here, the plaintiff delayed approximately twenty years after learning of its claim. The plaintiff in *Hot Wax* admitted that he believed that a violation of his intellectual property rights first occurred in the mid–1970's. The Court found that the plaintiff's unexplained twenty-year delay was dispositive and characterized the plaintiff's argument in opposition as an "absurdity"—"[the plaintiff's] twenty-year delay [was] unreasonable as a matter of law." *Id.* at 1049–50 (citing cases in which delays of five, nine, and fifteen years also barred). As the *Hot Wax* court concluded:

> It was inexcusable for [the plaintiff] to brood over [its] concerns for more than twenty years while [the defendant] battled for market position.... While [the plaintiff's] claims may have raised thought provoking, even actionable issues years ago, its two decade delay in

pursuing these claims has rendered them untenable....

27 F.Supp.2d at 1052. Given that Kepner knew of EDI's original materials in 1975, chose to do nothing to safeguard its rights in the interim, and "failed to diligently assert any copyright, it should not be permitted to assert such a right at this late juncture." *Certified Eng'g*, 849 F.Supp. at 325. Kepner's purported obliviousness to EDI's 1985 products cannot serve as a shield for its somnolence over the past fourteen years.

### b. Prejudice to EDI

■ EDI alleges that Kepner's two-decade delay has prejudiced them from both economic and evidentiary standpoints.

### 1) Economic Prejudice

EDI alleges that it has suffered economic prejudice from Kepner's delay because

1) EDI built a business around the "SITUATION MANAGEMENT" and "DECISION FOCUS" materials;

2) Over the past few years, EDI spent over $300,000 to develop and upgrade software to support its DECISION FOCUS materials, an expenditure it would not have made had it known that it could not use the materials;

3) David Osgood left a good job earning higher compensation, and receiving health benefits, to come to EDI in 1991;

4) Mary Osgood has worked for EDI for fifteen years;

5) EDI has formed numerous business relationships around the "DECISION FOCUS" materials; and

6) EDI's insurer has indicated that it intends to deny coverage on the ground that the allegedly infringing materials were first published prior to the years of its coverage.

Where an alleged infringer, like EDI, has developed its entire business around one name or product that another party then seeks to prohibit it from using or

producing, prejudice sufficient for laches exists. *See, e.g., Commerce Nat'l Ins. Serv. v. Commerce Ins. Agency, Inc.*, 995 F.Supp. 490, 503 (D.N.J.1998) (holding that laches bars trademark infringement claim where plaintiff's fourteen-year delay prejudiced defendant that had built valuable business around its trademark); *Jackson v. Axton*, 25 F.3d 884, 889 (9th Cir.1994) (affirming summary judgment based upon laches where, during plaintiff's twenty-year delay in asserting his copyright claim, defendant had arranged his business around the work and licensed the work to third parties); *Martin v. Cuny*, 887 F.Supp. 1390, 1394 (D.Colo.1995) (holding copyright claims barred by laches where defendant had used the work, expanded a merchandise line based on the work, and promoted the circulation and display of the work during the nine-year delay); *Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. 410, 429–30 (E.D.Pa.1980) (holding plaintiff's damages claim barred by laches when defendant had invested in manufacturing the infringing product during plaintiff's seven-year delay in suing).

As early as 1916, federal courts recognized the inequities in allowing delayed copyright infringement suits:

> [I]t is inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success. Delay under such circumstances allows the owner to speculate without risk with the other's money; he cannot possibly lose, and he may win.

*Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D.N.Y.1916)

Kepner argues that EDI could have avoided prejudice by informing Kepner in 1985 that it was no longer using the 1975 SITUATION MANAGEMENT materials. Kepner argues also that EDI could have forwarded the DECISION FOCUS materials to Kepner in 1985 for review. Kep-ner argues further that EDI has only itself to blame for any alleged prejudice. This Court disagrees.

As stated above, Kepner fails to articulate any legal precedent to support its theory that EDI had a duty to inform Kepner, and to forward to Kepner, the DECISION FOCUS materials. Moreover, the law places a duty to investigate upon Kepner. *See Wanlass*, 148 F.3d at 1338, 1340–341. No such investigation took place. Accordingly, this Court finds that Kepner's delay was inexcusable and allowing the claim to proceed would economically prejudice EDI.

### 2) Evidentiary Prejudice

EDI contends that it has suffered the following evidentiary prejudice due to Kepner's delay of more than two decades in bringing this action. In its brief, EDI states the following:

> [T]he memory of every witness in this case [has] faded and weakened. Because of the legal presumptions that a copyright plaintiff enjoys, that loss falls far more heavily on EDI than on Kepner. Proving how it developed its materials is much more difficult for EDI than it would be if this debate were occurring in 1975–1976;

> Kepner has questioned and criticized [defendants] ... because they lack evidence, including a thesaurus, showing how they developed the materials. Drafts or other such evidence would exist if Kepner had sued at a reasonable time;

> Kepner can produce no knowledgeable witness about how its own materials were developed and what part of them, if any, is original;

> Kepner has destroyed or lost ... the preexisting materials that would show what, if anything, is original about the materials on which it rests this case, including the preexisting copyrighted materials for which Kepner apparently allowed the copyright to lapse; and

Kepner cannot produce knowledgeable witnesses about the 1975 exchange between the parties, which could prove that at that time, Kepner had examined EDI's materials and concluded that they did not infringe: they are all retired or dead.

Def.'s Br. at 23.

Evidentiary prejudice may arise from a defendant's inability to present a full and fair defense on the merits because of the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts. *See Wanlass*, 148 F.3d at 1337 (citing *A.C. Aukerman Co.*, 960 F.2d at 1033). "[P]rejudice that will support the defense of laches includes loss of evidence in support of the defendant's position." *Whitfield v. Anheuser–Busch, Inc.*, 820 F.2d 243, 245 (8th Cir. 1987) (affirming summary judgment based on laches when a case was commenced ten years after layoff, and witnesses testified that they could no longer accurately recall the events leading to the layoff at issue). In *Jackson*, the Ninth Circuit affirmed a grant of summary judgment on the basis of laches when one aspect of prejudice was the loss of the paper on which defendant had written the lyrics to the song at issue, which was relevant to impeach the other witnesses' testimony and to support the defendant's version of the facts. 25 F.3d at 889.

In its summary judgment reply brief, Kepner devotes three pages to argue that EDI has not suffered evidentiary prejudice, yet Kepner fails again to cite any legal authority to support its contentions.[12] This Court finds Kepner's argument on this issue unpersuasive. Accordingly, applying the rationale employed by *Wanlass* and *Whitfield*, this Court finds that EDI has suffered evidentiary prejudice from Kepner's delay.

## II. Public Domain

EDI's second basis for summary judgment is that Kepner's works rest in the public domain and are, therefore, unprotectable expressions that are free for the world to use. Kepner argues, however, that the GENCO II and APEX II materials are not in the public domain for the following reasons:

▲ that even if GENCO II and APEX II are in the public domain, a) they would not have gone into the public domain until 1991; and b) the co-authors of the DECISION FOCUS materials (Guberud and Osgood) deny copying from the materials;

▲ that case law requires that the infringer must show that it copied from the public domain material[13];

▲ that the 1963 Works are irrelevant because they are not the subject of this suit;

**12.** Kepner's only mention of case law is in an attempt to distinguish *Haas v. Leo Feist, Inc.*, a 1916 case cited by EDI in EDI's summary judgment brief. 234 F. 105 at 108 (S.D.N.Y.). ("It must be obvious to everyone familiar with equitable principles that it is inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success"). Specifically, Kepner claims that it did not have the "full notice of an intended infringement" that *Haas* requires for inequity in a copyright suit to exist. Kepner states that the reason that it did not have full notice is because EDI did not send to Kepner the DECISION FOCUS materials in

1985, and that EDI did not inform Kepner that the DECISION FOCUS materials were a substitute for the 1975 SITUATION MANAGEMENT materials which were the subject of the 1975 correspondence. As determined above, however, Kepner was under a duty to monitor EDI's products and to bring suit promptly. *See Wanlass*, 148 F.3d at 1338, 1340–341.

**13.** *See Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1093 n. 3 (2d Cir.1977) (holding that to demonstrate that infringing material was copied from material in public domain, infringer must show that it copied from public domain material).

▲ that Kepner did not destroy its 1963 Works;

▲ that EDI's DECISION FOCUS copyrighted work does not state that any material has been taken or adapted from the public domain;

▲ that Kepner has properly copyrighted all of its materials by placing a copyright notice on at least the front page of the document; and

▲ that EDI denies that it copied the 1963 Works.

Kepner's public domain argument fails.

■ EDI argues that Kepner's reliance on pre-existing, unprotectable, public domain expression bars its claims. Copyright law protects only original writings. 17 U.S.C. § 101 (1994). Public domain material cannot be copyrighted, and protection for derivative work "extends only to the [original] material contributed by the author". 17 U.S.C. § 103(b) (1994). Indeed, "copyright is not a tool by which a compilation author may keep others from using the facts or data he or she has collected." *Feist Publications*, 499 U.S. at 359, 111 S.Ct. 1282. In addition, when a work is derived from a pre-existing work, whether in the public domain or under copyright, only the original elements added by the author of the derivative work are protected by the new copyright in the derivative work. *See Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 909 (2d Cir. 1980); Abrams, The Law of Copyright § 2.02[B] at 2–8. A copyright in a derivative work protects only the additional original contributions of the author of the derivative work and does not protect the included elements of the original work. *See Silverman v. CBS, Inc.*, 870 F.2d 40, 49 (2d Cir.1989) ("[T]he fundamental copyright principle applicable to this case is that a copyright affords protection only for original works of authorship and, consequently, copyrights in the derivative works secure protection only for the incremental additions of originality contributed by the authors of the derivative works").

Here, the evidence shows that both of Kepner's copyright registration certificates address derivative works. Specifically, the certificate for GENCO II, No. A–550,878, cites "previously published and copyrighted works collectively entitled 'GENCO.'" Lancaster Decl. Tab D at D–1. In addition, the APEX II, No. A–550,880, cites "previously published and copyrighted works collectively entitled 'APEX.'" *Id.* at D–12. Under *Durham* and *Silverman*, it necessarily follows that the copyrights in GENCO II and APEX II protect only the material that is new in GENCO II and APEX II, and not the material in prior "Genco" or "Apex" works.

■ Moreover, a registration for a derivative work, such as the 1973 materials on which this case is based, cannot eliminate a right to use an underlying work that is in the public domain. A copyright in a derivative work prevents copying from the derivative work, not the original. *See* Abrams, *supra*, § 2.02[B][4] at 2–21. If rights in an underlying work have lapsed, then rights in the work are not recreated through registration of a derivative work:

The copyright in a … derivative work … does not imply any exclusive right in the pre-existing material. The copyright in such work … does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

17 U.S.C. § 103(b). "Thus, the copyright in a derivative or collective work merely protects against copying or otherwise infringing the particular compilation or arrangement of a collective work"—the underlying work is excluded from protection. 1 *Nimmer on Copyright*, § 3.04[A] at 3–19 (citations omitted). As Professor Nimmer further explains:

[If] the derivative work copyright subsists at a time when the underlying work is forfeited (*either because of the expirations of the period of copyright in the underlying work or because of a publication of the underlying work with defective notice), … any restriction on*

*the use of the underlying work ... will have no further effect.*

*Id.* at § 3.07[C] at 3–51 (citing *G. Ricordi & Co. v. Paramount Pictures, Inc.,* 189 F.2d 469 (2d Cir.1951), *cert. denied,* 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951)) (emphasis added); *See Burroughs v. Metro–Goldwyn–Mayer, Inc.,* 683 F.2d 610, 632 (2d Cir.1982) (Newman J., concurring).

■ The evidence presented to this Court shows that the 1963 Works pre-existed the materials on which Kepner bases this case. Lancaster Decl. Tab D at D–43 to D–48. In addition, the evidence shows that Kepner failed to renew its copyrights in the 1963 Works; that Kepner cannot identify any expression in its 1973 materials that was not also in the 1963 Works; and that Kepner cannot produce a copy of the 1963 Works.[14]

This Court finds that the 1963 Works are in the public domain based upon the following analysis. Under the then-governing 1909 Copyright Act, the failure to renew the copyrights in the 1963 Works within twenty-eight (28) years after their 1963 publication released the previously copyrighted material into the public domain. The 1909 Act set out that consequence explicitly: "That in default of the registration of such application for renewal and extension, the copyright in any work: shall determine at the expiration of twenty-eight years from first publication." 17 U.S.C. § 24 (1947); *See Batjac Productions Inc. v. GoodTimes Home Video Corp.,* 160 F.3d 1223, 1225, 1236 (9th Cir. 1998) (recognizing that for works published in 1963, copyrighted material "fell into the public domain in 1991 when it was not renewed").

Kepner argues that it is irrelevant that it has failed to identify any expression in its 1973 materials that was not also in the 1963 Works, because the authors of GEN-CO II and APEX II allege that they did not copy any of Kepner's 1963 Works. This Court disagrees. This Court finds that since Kepner cannot identify an expression in its 1973 materials that was not also in the 1963 Works, the effect of the 1963 Works being public domain material is that Kepner cannot use its 1973 materials to resurrect rights it lost when the 1963 Works became public domain material.

Although there exists a valid copyright for the 1973 materials, this court finds that there does not exist a valid copyright for the 1963 Works. To wit, this court finds that Kepner failed to renew the copyright in the 1963 Works; that Kepner failed to identify any expression in its 1973 materials that was not also in the 1963 Works; and that Kepner destroyed its last copy of the 1963 Works. Accordingly, this Court finds that the 1963 Works entered the public domain in 1991 and anyone, including EDI, is free to use a work derivative from them. As this Court has determined that Kepner does not have a valid copyright for the 1963 Works, Kepner has failed the first prong of the copyright infringement test—ownership of a valid copyright.

### III. Evidence of EDI Copying or Access to Kepner's 1973 Materials

This Court's finding that the 1963 Works and the 1973 materials do not differ precludes the extension of unqualified copyright protections to the 1973 materials. As noted, Kepner cannot use its registration of these materials to resuscitate those rights which expired when the 1963 Works entered the public domain. Indeed, only original elements of a derivative work enjoy protection, and the 1973 materials contain no portions which satisfy this criterion. Neither EDI, nor any other business, can violate a nonexistent copyright protection. Even if Kepner

14. The Court need not reach the issue as to whether Kepner published some of the early versions of its works, particularly its worksheet, without proper copyright notices. The Court has reached its determination that the 1963 Works are in the public domain on other grounds.

could demonstrate that EDI utilized the 1973 materials, such exploitation could not constitute a copyright violation. Kepner provides neither evidence nor allegations supporting an inference that EDI either possessed or copied the 1973 materials. At best, Kepner contends only that Guberud, the founder of EDI, retained and copied currently unprotected Kepner tutorials predating his 1971 resignation. This accusation sidesteps Kepner's threshold evidentiary burdens regarding EDI's alleged appropriation of the 1973 materials. Finally, the conjunctive nature of the test for copyright violations—proof of ownership of a valid copyright and proof of actual copying of the protected material—decrees that a failure to meet either burden results in the demise of the claim. *See Entertainment Research Group, Inc.,* 853 F.Supp. at 321. As both prerequisites remain unsatisfied, Kepner's action against EDI must terminate.

CONCLUSION

Defendant moves for summary judgment on the following bases:

(1) Kepner's unexplained and inexcusable delay of more than twenty years before filing this lawsuit over claims that it first asserted back in 1975 bars its claims under well-established laches doctrine;

(2) Kepner's failure to establish any original content in its allegedly copyrighted materials beyond preexisting public domain (and thus unprotectable) materials defeats its claims;

(3) Kepner's failure to produce evidence of EDI either copying or having access to its allegedly copyrighted materials defeats its claims; and

(4) Kepner's inability to establish the threshold element of any copyright case—what the allegedly copyrighted materials are—defeats its claims.

Based on this court's analysis, defendant's motion is granted. There are no genuine issues as to any material facts. Applying the requisite standards to defendant's motion, summary judgment shall be granted.

ORDER

This Court addresses the motion for summary judgment of Defendant Executive Development, Inc.; and having considered the submissions of the parties; and having found good cause,

On this 13th day of December 1999,

ORDERS that Defendant's motion for summary judgment, pursuant to Fed. R.Civ.P. 56(c) is GRANTED; and

FURTHER ORDERS that a copy of this Order be served on all parties within seven (7) days of the date of this Order.