**LUAR MUSIC CORP., Plaintiff,**

v.

**UNIVERSAL MUSIC GROUP, INC.
and UMG Recordings, Inc.,
Defendants.**

Civil No. 09–2263 (DRD).

United States District Court,
D. Puerto Rico.

March 6, 2012.

Carlos G. Dalmau–Ramirez, Carlos Dalmau Law Offices, Christina M. Beauchamp–Richards, Guaynabo, PR, Roberto Sueiro–Del–Valle, Roberto Sueiro Del Valle LLM, Freddie O. Torres–Gomez, San Juan, PR, Juan C. Bigas–Valedon, Ponce, PR, for Plaintiff.

Roberto C. Quinones–Rivera, Isabel Torres–Sastre, McConnell Valdes, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

This is a copyright infringement action brought under the Copyright Act of 1976,

as amended, 17 U.S.C. § 101, *et seq.,* (the "Copyright Act"). The case arises from the reproduction, distribution and adaptation of the song and sound recording "Dale Don Dale" (the "Copyrighted Work"). (Docket No. 1, ¶¶ 1, 55–75). Plaintiff Luar Music Corp., ("Plaintiff" or "Luar") alleges that Defendants Universal Music Group ("Universal Music") and UMG Recordings ("UMG Recordings")(collectively, "Defendants") violated Plaintiff's rights to the Copyrighted Work when they released the phonorecords Don Omar Da Hitman presents Reggaeton Latino ("Reggaeton Latino"), Fiebre de Reggaeton, The Last Don and The Last Don Live. (Docket No. 1, ¶¶ 31–32, 42–46).

Currently before the Court is Defendants' motion to dismiss pursuant to FED. R.CIV.P. 12(b)(6) contending that Plaintiff's action is barred by the Copyright Act's three (3) year statute of limitations (Docket No. 118). Also pending before the Court is Plaintiff's converted motion for summary judgment (Docket No. 127) and Defendants' cross-motion for partial summary judgment, both addressing whether the equitable estoppel doctrine applies (Docket No. 141).[1] For the reasons set forth below, the Court hereby **GRANTS in part and DENIES in part** Defendants' motion to dismiss and **GRANTS** Defendants' cross-motion for partial summary judgment. Plaintiff's converted motion for summary judgment is hereby **DENIED.**

## I. Background

### A. Procedural History

On December 18, 2009, Plaintiff commenced an action against Defendants in the United States District Court for the District of Puerto Rico alleging several violations of the Copyright Act. (Docket No. 1). In an *Order* dated July 29, 2011, the Court dismissed Plaintiff's claims relating to the electronic exploitation of the Copyrighted Work because they were subject to a mandatory forum selection clause (Docket No. 107, page 11).

On October 9, 2011, Defendants filed a *Motion to Dismiss Plaintiff's Time–Barred Copyright Claims Pursuant to Fed.R.Civ.P. 12(b)(6)* (Docket No. 118). On October 3, 2011, Plaintiff opposed the motion to dismiss (Docket No. 127) and raised, *inter alia,* an equitable estoppel argument (Docket No. 127, pages 17–18). In support of Plaintiff's opposition, Plaintiff submitted a number of e-mail communications, an affidavit and other exhibits that were not attached to or referenced in the complaint (Docket No. 127). Thereafter, Defendants filed a motion to strike (Docket No. 130), which Plaintiff opposed (Docket No. 136).

In an *Order* dated November 1, 2011, the Court converted Plaintiff's opposition to Defendants' motion to dismiss into a FED.R.CIV.P. 56 motion for summary judgment only with respect to Plaintiff's contention that the statute of limitations was tolled under the doctrine of equitable estoppel (Docket No. 137). In compliance with the Court's *Order,* Defendants filed a *Response in Opposition to Motion for Summary Judgment and Cross–Motion for Partial Summary Judgment* on December 2, 2011 (Docket No. 141). On December 12, 2011, Plaintiff submitted *Plaintiff's Response in Opposition to Counter–Motion for Summary Judgment and Re-*

---

1. By order of this Court, dated November 1, 2011 (Docket No. 137) and clarified on November 2, 2011 (Docket No. 138), Plaintiff's opposition to Defendants' motion to dismiss was partially converted into a FED.R.CIV.P. 56 motion for summary judgment only with respect to Plaintiff's contention that Defendants mislead Plaintiff into believing that legal action was unnecessary.

*quest for Summary Judgment* (Docket No. 142).

## B. Facts

As the permissible scope of facts the Court is able to consider differs on a motion for summary judgment and a motion to dismiss, the Court divides the presentation of facts between those admissible on a motion to dismiss and those admissible on summary judgment.

### 1. Motion to Dismiss Facts

The facts taken from the complaint are as follows: [2]

The Copyrighted Work was authored by William Omar Landrón, a Reggaeton artist professionally known as Don Omar ("Don Omar"). (Docket No. 1, ¶ 16). By written contract, Don Omar transferred his rights to the Copyrighted Work to Plaintiff, a corporation dedicated to project management and licensing songs and sound recordings. (*Id.*, ¶ 6). Subsequently, Plaintiff received Certificates of Registration from the United States Copyright Office for the Copyrighted Work, effective June 24, 2004. (Docket No. 1, ¶ 17–18).

Plaintiff filed an action in the United States District Court for the District of Puerto Rico against non-party VI Music Corporation ("VI Music"). (Docket No. 1, ex. 4). VI Music is a joint venture involving Defendant UMG Recordings. (Docket No. 107, page 5). Plaintiff alleged that VI Music infringed on Plaintiff's rights to the Copyrighted Work by reproducing and distributing the phonorecords "The Last Don" and "The Last Don Live." (*Id.*). In November of 2005, Plaintiff and VI Music entered into an agreement to resolve Plaintiff's claim (the "Agreement"). (Docket No. 1, ¶ 21).

The Agreement included a license detailing VI Music's authorized uses of the Copyrighted Work (the "November License"). (Docket No. 1, page 21). According to Plaintiff, the November License permitted VI Music to manufacture and distribute the Copyrighted Work, as part of The Last Don in "the United States, the United States territories and possessions, and Puerto Rico" and the The Last Don Live.[3] (Docket No. 1, page 22). On April 1, 2005, Plaintiff granted VI Music a separate license authorizing the digital and mobile distribution of the Copyrighted Work ("April License"). (Docket No. 1, page 28). According to the complaint, Defendants' uses of the Copyrighted Work exceeded the scope of the November License and April License by including, reproducing, adapting, distributing and publicly performing the Copyrighted Work in connection with the reproduction and distribution of Reggaeton Latino, Fiebre de Reggaeton, The Last Don and The Last Don Live.[4] (Docket No. 1, ¶¶ 30–32, 39, 42–43).

---

2. When analyzing a Rule 12(b)(6) motion to dismiss, courts must treat "[n]on-conclusory factual allegations ... as true, even if seemingly incredible." *Ocasio–Hernandez v. Fortuno–Burset*, 640 F.3d 1, 12 (1st Cir.2011)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009)). In contrast, courts must disregard "legal conclusion[s] couched as ... fact[ ]" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (internal quotations and citations omitted).

3. The complaint is ambiguous as to whether the November License limited VI Music to the manufacture and distribute The Last Don Live only in the United States, the United States territories and possessions, and Puerto Rico. (Docket No. 1, ¶ 22).

4. The complaint does not explicitly allege the manner in which Defendants infringed on Plaintiff's rights in connection with The Last Don and The Last Don Live. It appears as though Plaintiff contends that Defendants distributed The Last Don and The Last Don Live internationally, in violation of the November

Plaintiff avers that the infringement in connection with the album Reggaeton Latino has been ongoing at least since January of 2006. (Docket No. 1, page 43). It is unclear when Fiebre de Reggaeton was released. (Docket No. 1, page 45).

## 2. Summary Judgment Facts

When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *See Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir.2010); *See also Agusty–Reyes v. Dept. of Edu.*, 601 F.3d 45, 48 (1st Cir.2010); *Cadle Co. v. Hayes*, 116 F.3d 957, 959–60 (1st Cir.1997). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera*, 622 F.3d at 26 (internal quotations and citations omitted); *see also Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996). Further, the Court will not consider hearsay statements or allegations presented by parties that do not properly provide specific reference to the record. *See* D.P.R. CIV. R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a spe-

cific citation to the record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir.2001)(finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.") Accordingly, all statements of fact herein are drawn solely from the properly-supported statements of proposed fact proffered in conjunction with Plaintiff's converted motion for summary judgment and Defendants' counter-motion for partial summary judgment.[5] When setting forth the facts, the Court keeps in mind that it is the provenance of the jury, not the judge, to determine credibility, weigh evidence and draw inferences. *Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(internal citations omitted).

On November 13, 2006, Raul Lopez ("Raul"), Plaintiff's president, sent an email to Tere Batista ("Batista").[6] (Dock-

License. (Docket No. 1, ¶¶ 31–31, 42; Docket No. 127, pages 15–16).

**5.** D.P.R. CIV. R. 56(b), often referred to as the anti-ferret rule, requires the party moving for summary judgment to submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact." Similarly, the non-moving party is required to submit a counter-statement "admit[ing], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph in the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by record citation." D.P.R. CIV. R. 56(c). Plaintiff argues that Defendants admitted certain facts contained in their D.P.R. CIV.

R. 56(b) statement when Defendants stated that the emails Plaintiff's rely on "speak for themselves." (*See e.g.*, Docket No. 150, ¶¶ 9a, d; Docket No. 142, pages 13–14). The Court agrees that Defendants do not contest that the statements contained within the emails are true. However, Defendants do not admit the ultimate conclusion that Plaintiff's draw in interpreting the emails. After all, "[a]s a general principle, parties may not include legal arguments or conclusion in their statement of facts." *Oquendo–Rivera v. Toledo*, 736 F.Supp.2d 434, 436 (D.P.R.2010)(internal citations omitted).

**6.** The parties do not state that Batista worked for Defendants. Nevertheless, Batista's email address contains the "umusic.com" domain name.

et No. 127–7). Raul stated that he could not wait much longer to resolve an apparent dispute with Defendants and wanted to settle the dispute "peacefully." [7] (Docket No. 127–7). On the same day, Batista told Raul that the finance and central royalties departments were handling the matter. (Docket No. 127–7; Docket No. 143). Subsequently, Ivan J. Parron, Universal Music's Business and Legal Affairs Manager, sent Raul an email with royalty statements attached.[8] (Docket No. 143, ¶ 9b; Docket No. 143–8). According to Raul, Gustavo Lopez ("Gustavo"), Defendants' employee offered him to pay twenty-one (21) cents per copy to use the Copyrighted Work sometime in 2006. (Docket No. 143–3, ¶ 2). However, the parties did not reach an agreement. (Docket No. 143–3, ¶ 3). Plaintiff states that they offered Defendants twenty-five (25) cents per copy in early 2007. (Docket No. 143, ¶ 15). The record does not show conclusively that the parties reached an agreement.

On January 24, 2007, Raul wrote Patricia Rivera Macmurray [sic] ("Macmurray"), Plaintiff's legal counsel from 2005 to 2008. (Docket No. 143, ¶ 9c; Docket No. 143–5; Docket No. 143–2, ¶ 2). Raul stated that he was affected by Defendants' delays. He stated that he refused to be the "neighborhood idiot" who Defendants "step all over . . . ." (Docket No. 143–5). Moreover, Raul said that he had several legal claims that he needed to submit including an action against Defendants for the release of a remixed version of the Copyrighted Work. (Docket No. 143–5).

Nearly two year later, on November 24, 2008, Raul emailed Ely Juarez ("Juarez"), Defendants' attorney, about the parties' dispute. (Docket No. 143, ¶ 9d). Raul wrote to Juarez that Defendants were not responding to their dispute with a "positive attitude" and were unwilling to resolve Defendants' alleged copyright violations. (Docket No. 143–10). Raul stated that although Juarez previously agreed to send their sales numbers, Plaintiff did not receive them. (Docket No. 143, ¶ 9d; Docket No. 143–10). Raul forwarded the email to Gustavo on the same day. (Docket No. 143–10). Raul reiterated that although he tried to resolve the dispute amicably, Defendants had no intention of doing so and that he was tired of waiting for Defendants to change their tune. (Docket No. 143–10).

Both Juarez and Lopez replied on the same day. (Docket No. 143, ¶ 9e-f). Gustavo asked Raul to give him a week so he could hold a conference call. (Docket No. 143–11). Gustavo also told Raul that he would not let his or Raul's credibility be affected by their dispute. (Docket No. 143–11). Juarez stated that although she understood Raul's point of view, Defendants' accounting department had recently relocated to Los Angeles. (Docket No. 143–12; Docket No. 143, ¶ 9e). Juarez suggested that once Raul received his accounting statements, they should compare them at the "accounting level" and pay any

---

7. It is not clear from the email that the dispute between the parties was regarding the inclusion of the Copyrighted Work in Fiebre de Reggaeton or Reggaeton Latino and the distribution of The Last Don and the Last Don Live internationally. Defendants do admit, however, that they were attempting to reach an agreement regarding alleged unpaid royalties. (Docket No. 131, page 6).

8. The scope of the royalty statement was for purchases of The Last Don, Reggae 2005 and the Last Don Canada Version. (Docket No. 143–6). The statements do not mention of The Last Don Live, Reggaeton Latino or Fiebre de Reggaeton. (Id.).

deficiencies. (Docket No. 143–12; Docket No. 143, ¶ 9e).

Another email exchange occurred on February 12, 2009, almost three months after Raul first email to Juarez. (Docket No. 143–15; Docket No. 143, ¶ 9i). Carlos Dalmau ("Dalmau"), Plaintiff's new attorney, told Juarez that Defendants did not have a license to include the Copyrighted Work in Reggaeton Latino and Fiebre de Reggaeton. (Docket No. 143–14, 15). Dalmau suggested that Plaintiff would be willing to make a deal authorizing Defendants to use the Copyrighted Work. (Docket No. 143–15). Juarez responded by asking if Plaintiff would consider a seventy percent (70%) royalty reduction for international sales and saying that "hopefully we can finish of whatever other matters we have pending." (Docket No. 143–15; Docket No. 143, ¶ 9j).

On February 23, 2009, Juarez requested a meeting with Raul and Dalmau to discuss the parties' disagreements. (Docket No. 143, ¶ 9k). A day later, Juarez asked for Raul for the dates he was available to meet. (Docket No. 143, ¶ 9l). On that day, Dalmau told Raul that Defendants asked for the correct information to complete a W–9 tax form. (Docket No. 143, ¶ 9m; Docket No. 143–18).

On March 5, 2009, Raul sent another email to Juarez. Therein, Raul noted that Juarez's original offer to pay $80,000 would be reduced to $40,000.[9] (Docket No. 143, ¶ 9m). Raul's email does not indicate whether the offer to pay $40,000 was to settle Plaintiff's allegation that Defendants unlawfully released and distributed the Copyrighted Work as part of Fiebre de Reggaeton or Reggaeton Latino. Raul noted that Juarez tried to persuade

him to join their account with a separate corporation's account. (Docket No. 143, ¶ 9n).

On March 10, 2009, Dalmau wrote Juarez requesting her to send accurate information regarding the royalties and the payments Plaintiff would receive.[10] (Docket No. 143–21). That day Juarez responded that the parties need to have more patience because Defendants' finance department in Los Angeles has not provided the information requested. (Docket No. 143–21). On March 13, 2009, Juarez wrote Dalmau and Raul and stated that Universal Records did not provide her with any information regarding Reggaeton Latino, but that the information may be received shortly. (Docket No. 143–21). Although Raul and Dalmau met with Universal's legal representative, Gustavo, Juarez and Walter Kolm, a Universal representative, in March of 2009 to reach an amicable agreement, Kolm avoided the issue. (Docket No. 143–3). According to Raul, Juarez promised to provide "all necessary paperwork, royalty statements, and an agreements [sic] that would resolve all issues." (*Id.*). On March 25, 2009, Dalmau asked Juarez for a written breakdown of the royalties and payments owed to Plaintiff under the Agreement. (Docket No. 143–20). Juarez told Dalmau that she was told that payments were made in connection to the Agreement. (*Id.*) On March 26, 2009, Juarez wrote Dalmau and Raul that mechanical royalties, pursuant to the Agreement was $48,049.07. (Docket No. 143, ¶ 32; Docket No. 143–20).

## II. DISCUSSION

The Court proceeds in two steps. The Court first analyzes Defendants' motion to

---

9. There is no indication when Juarez offered to pay Plaintiff $80,000.

10. The email is ambiguous as to whether Raul is referring to royalties for the use of the Copyrighted Work as part of Fiebre de Reggaeton and Reggaeton Latino.

dismiss addressing whether Plaintiff's action is barred by the Copyright Act's statute of limitations. After concluding that Plaintiff's action is untimely, in part, by the statute of limitations, the Court analyzes Plaintiff's converted motion for summary judgment and Defendants' countermotion for partial summary judgment addressing whether the equitable estoppel saves the untimely portion of Plaintiff's action from dismissal.

## A. Motion to Dismiss: The Statute of Limitations As An Affirmative Defense to Plaintiff's Action

Defendants' Rule 12(b)(6) motion to dismiss alleges that Plaintiff's action is barred by the applicable statute of limitations. (Docket No. 118, page 2). A motion to dismiss may be granted when the plaintiff's complaint "leaves no doubt" that the plaintiff's claim is barred by the statute of limitations. *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir.1998)(internal citations omitted). "The facts establishing the defense must be clear 'on the face of the plaintiff's pleadings.'" *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir.2001)(quoting *Aldahonda–Rivera v. Parke Davis & Co.*, 882 F.2d 590, 591 (1st Cir.1989)).

To satisfy the statute of limitations, an action for copyright infringement must be brought within three (3) years after the claim accrued. 17 U.S.C. § 507(b); *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 85 (1st Cir.2007). Defendants argue that Plaintiff's action is barred by the statute of limitations because Plaintiff commenced this action by filing the complaint on December 18, 2009, four years after their claim accrued.

(Docket No. 118, page 3). Plaintiff argues that it discovered Defendants' alleged copyright on January of 2007, within the three year statute of limitations. (Docket No. 127, page 17.)

## 1. Infringing Acts Occurring Within The Three (3) Years Prior to Filing the Complaint

■ Under the Copyright Act, " '[e]ach act of [copyright] infringement is a distinct harm giving rise to an independent claim for relief.' " *Airframe Sys., Inc. v. Raytheon Co.*, 520 F.Supp.2d 258, 267 (D.Mass.2007)(quoting *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir.1992)). Thus, each infringing act is subject to a separate statute of limitations period. *See Bruce v. Weekly World News, Inc.*, 310 F.3d 25, 27–28 (1st Cir.2002); *TMTV Corp. v. Pegasus Broad. of San Juan*, 490 F.Supp.2d 228, 232 (D.P.R.2007)(citing *Roger Miller Music v. Sony/ATV Publishing*, 477 F.3d 383, 390 (6th Cir.2007)). Accordingly, a plaintiff is entitled to recover for copyright violations occurring within the three years prior to filing suit even if the plaintiff is not allowed to recover for violations occurring more than three years after filing suit. *Ocasio v. Alfanno*, 592 F.Supp.2d 242, 246 (D.P.R.2008)(citing *Weekly World News*, 310 F.3d at 27–28 (1st Cir.2002)); *Stone v. Williams*, 970 F.2d 1043, 1050 (2d Cir.1992)("[Plaintiff's] failure to seek relief promptly for violations of her entitlement to renewal copyrights does not make defendants immune from suit for later violations.").

Here, Plaintiff avers that Defendants have continually infringed on Plaintiff's rights to the Copyrighted Work in connection with Reggaeton Latino at least since January of 2006.[11] (Docket No. 1, ¶¶ 39, 42–52). Plaintiff commenced the instant

---

**11.** It is unclear when the infringement began as part of Fiebre de Reggaeton, The Last Don and The Last Don Live.

action by filing a complaint on December 18, 2009. (Docket No. 1). While some alleged incidents of unlawful use of the Copyrighted Work may fall outside the three (3) year statute of limitations period, Plaintiff's claims alleging copyright infringement within the limitations period are timely. *See Ocasio,* 592 F.Supp.2d at 246; *Stone,* 970 F.2d at 1050. Accordingly, Plaintiff may recover for copyright infringement occurring after December 18, 2007, three (3) years prior to filing suit.

■ Plaintiff urges the Court to invoke the "continuing wrong" doctrine. (Docket No. 127, pages 11–12). Under the continuing wrong doctrine, an action is timely as to all infringing acts if one infringing act occurred within the three (3) years prior to filing suit. *Taylor v. Meirick,* 712 F.2d 1112, 1119 (7th Cir.1983); 3 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* Nimmer § 12.05[B][1][a], at 12–150.2 (2011). This is true even if other infringing acts occurred more than three (3) years prior to filing suit. *Id.* The First Circuit Court of Appeals has not directly addressed the viability of the continuing wrong doctrine. *See Prof'l Mkt. Research, Inc. v. AC Nielsen Corp.,* No. 03–2314, 2009 WL 1259956, at *1 (D.P.R. May 4, 2009). Moreover, a majority of Circuits that addressed the continuing wrong doctrine have rejected its application to copyright infringement actions. *See Id.* (declining to apply the continuing wrong doctrine because at least five "sister circuits" rejected the doctrine); *See also* 3 Melville B. Nimmer & David Nim-

mer, *Nimmer On Copyright* Nimmer § 12.05[B][1][a], at 12–150.3 (2011)(internal citations omitted). Unless the First Circuit Court of Appeals instructs otherwise, the Court declines to trailblaze new law and apply the continuing wrong doctrine in the copyright infringement context.

### 2. Acts of Infringement Occurring More Three (3) Years Prior to Commencing the Action

■ The Court previously noted that the Copyright Act bars copyright infringement claims brought more than three (3) years after the claim accrues. 17 U.S.C. § 507(b); *Cambridge Literary Props.,* 510 F.3d at 85 (quoting *Santa–Rosa v. Combo Records,* 471 F.3d 224, 227 (1st Cir.2006)). The First Circuit Court of Appeals applies the "discovery rule" to determine the accrual of copyright actions.[12] *Cambridge Literary Props.,* 510 F.3d at 88 (quoting *Santa–Rosa,* 471 F.3d at 227); *Warren Freedenfeld Assocs.,* 531 F.3d at 44 (internal citations omitted). Pursuant to the discovery rule, a claim accrues under the Copyright Act when the plaintiff "knows or has reason to know of the act which is the basis for the claim." *Cambridge Literary Props.,* 510 F.3d at 88 (quoting *Santa–Rosa,* 471 F.3d at 227; *Warren Freedenfeld Assocs.,* 531 F.3d at 44) (internal citations omitted). Defendants argue that Plaintiff knew or should have known of the alleged copyright infringement more than

12. In *Warren Freedenfeld Assocs. v. McTigue,* 531 F.3d 38, 46 n. 3 (1st Cir.2008), the First Circuit Court of Appeals noted that "a smattering of judges and commentators have questioned the continued vitality of the discovery rule in copyright infringement cases." (citing *Auscape Int'l v. Nat'l Geo. Soc'y,* 409 F.Supp.2d 235, 242–48 (S.D.N.Y.2004); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.05[B][2][b], at 12–

150.4 to 150.8 (2007)). The First Circuit declined to explicitly confront the issue in *Warren Freedenfeld,* while, nevertheless, applying the discovery rule in that case. *Id.* In fact, the First Circuit stated that "the [discovery] rule reflects a sensible tradeoff-a policy decision that balances the important interests of repose against the substantial hardship that an inflexible statute of limitations might otherwise foster." *Id.*

three (3) years prior to filing suit. (Docket No. 118, pages 3–7).

### a. Actual Knowledge

Where a plaintiff has actual knowledge of alleged copyright infringement, accrual begins when the plaintiff acquired such knowledge. *Warren Freedenfeld Assocs.,* 531 F.3d at 44. Defendants contend that Plaintiff was aware of Defendants' purported infringement as early as January 2006, nearly four year before Plaintiff filed the Complaint. (Docket No. 118, pages 2–4). Plaintiff counters that it discovered Defendants' alleged copyright on January 2007, within the three (3) year statute of limitations. (Docket No. 127, page 17.) In support of their contention, Defendants point to Plaintiff's complaint, which states that "at least since January 2006, Defendants have ... violated Plaintiff's exclusive rights...." (*Id.*)(citing Docket No. 1, ¶¶ 41, 43–47). Moreover, Defendants posit that Plaintiff acknowledged, in the Agreement, that Plaintiff was aware of Defendants' international distribution of the Copyrighted Work.[13] (Docket No. 118, page 4)(citing Docket No. 1, ex. III ¶ 11). Defendants' arguments are without merit.

An allegation that Defendants violated the copyright laws "at least since January 2006" is not akin to having knowledge of the alleged infringement "at least since January 2006." Similarly, that Plaintiff acknowledged in the Agreement that De-

fendants violated its rights to the Copyrighted Work prior to the Agreement and that "certain licenses for international distribution have been granted incidentally" does not plausibly imply that Plaintiff had actual knowledge of infringing uses after signing the Agreement. In fact, the Agreement was entered into to resolve Plaintiff's claim against VI Music for copyright violation when it reproduced and distributed the Copyrighted Work as part of The Last Don and The Last Don Live. (Docket No. 1–4). The Agreement acknowledges Defendants' infringing uses of the Copyrighted Work in connection with The Last Don and The Last Don Live in the past, not as of the date of the Agreement or continuing on into the future.

Drawing all reasonable inferences in Plaintiff's favor, as the Court must when analyzing a motion to dismiss, Defendants have not established that Plaintiff had actual knowledge of the alleged copyright infringement more than three (3) years before filing suit. Accordingly, for Defendants' statute of limitations affirmative defense to succeed, Defendants must establish that Plaintiff had reason to know of any alleged copyright infringement.

### b. Inquiry Knowledge

█ Where, as here, a defendant is unable to establish that a plaintiff knew of the infringing acts prior to the statute of limitations period expiration, the issue be-

---

**13.** Defendants argue, in their opposition to Plaintiff's converted summary judgment motion, that an email reveals that Plaintiff had knowledge that Reggaeton Latino was released in November 2005. (Docket No. 141, page 2). The general rule is that the Court is not permitted to review documents extrinsic to the complaint when evaluating a motion to dismiss. *Young v. Lepone,* 305 F.3d 1, 10–11 (1st Cir.2002); *Trans–Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir.2008)(citing *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 18 (1st Cir.1992)). The Court converted Defendants' motion to dismiss into a FED.R.CIV.P. 56 motion for summary judgment only with respect to Plaintiff's contention that the statute of limitations was tolled by the equitable estoppel doctrine. (Docket No. 137). The Court's analysis concerning whether Plaintiff's action is untimely under the Copyright Act's statute of limitations is determined based on motion to dismiss standards. *Id.* Accordingly, the Court will not consider the email because it is not within the four corners of the complaint. *Id.*

comes whether "a reasonable prudent person in the plaintiff's shoes would have discovered (that is, would have acquired an awareness of) the putative infringement." *Warren Freedenfeld Assocs.*, 531 F.3d at 44 (internal citations omitted). Determining whether a reasonable person in the plaintiff's shoes would have discovered infringing behavior is fact-sensitive. *Warren Freedenfeld Assocs.*, 531 F.3d at 44–45. According to Defendants, a reasonably prudent person would have known of the alleged copyright infringement when: (1) Plaintiff and VI Music entered the Agreement to resolve Plaintiff's allegation that VI Music infringed on Plaintiff's rights to the Copyrighted Work; and (2) Fiebre de Reggaeton and Reggaeton Latino were publicly released. The Court agrees.

■ A reasonably prudent person is charged with a duty of diligence. *Warren Freedenfeld Assocs.*, 531 F.3d at 44. Under the duty of diligence, "a plaintiff can be charged with inquiry notice, sufficient to start the limitations clock, once he possesses information *fairly suggesting* some reason to investigate whether he may have suffered an injury at the hands of a putative infringer." *Id.* (emphasis added). Here, Plaintiff alleges that Defendants violated Plaintiff's rights to the Copyrighted Work when they released and distributed Reggaeton Latino, Fiebre de Reggaeton, The Last Don and The Last Don Live. (Docket No. 1, ¶¶ 31–32). Prior to the instant dispute, however, Plaintiff filed an action against VI Music alleging that VI Music infringed on the Copyrighted Work.[14] (Docket No. 1, ex. 4). Plaintiff and VI Music entered the Agreement to resolve Plaintiff's claim. Once Plaintiff learned that VI Music infringed on their rights to the Copyrighted Work, Plaintiff possessed information that should have prompted a reasonably prudent plaintiff to investigate whether Defendants were continuing to infringe on their rights. *See McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir.2004)(holding that prior to charging a party with inquiry notice, there must be a triggering event that comes to the plaintiff's attention.); *see also Warren Freedenfeld Associates*, 531 F.3d at 45 (reciting the popular aphorism "where there is smoke there is fire."). In fact, the Agreement states that VI Music "wishes to continue distributing" the Copyrighted Work. A reasonable person in Plaintiff's shoes would have been diligent in ensuring that Defendants' uses of the Copyrighted Work was within the scope of the Agreement.

Defendant relies on *Kepner–Tregoe, Inc. v. Executive Development, Inc.*, 79 F.Supp.2d 474, 488 (D.N.J.1999). There, the plaintiff alleged that the defendant infringed on its copyrights to instructional material related to strategic and operational decision-making. Defendant moved for summary judgment under the laches doctrine because the plaintiff previously accused the defendant of copyright infringement in 1975 but only brought suit in 1999.[15] *Kepner–Tregoe*, 79 F.Supp.2d at 486–87. The court found that the plaintiff's suit was barred by laches. *Kepner–Tregoe, Inc.*, 79 F.Supp.2d at 491. The court reasoned that the plaintiff's delay in bringing suit was unreasonable because the defendant's copyright infringement in 1975 placed a duty to monitor the defen-

14. As previously noted, VI Music is a joint venture involving UMG Recordings. (Docket No. 107, page 5).

15. Laches is an equitable doctrine that prevents a plaintiff from bringing suit where the plaintiff's unreasonably delay in bringing suit prejudices the defendant. *Doyle v. Huntress, Inc.*, 513 F.3d 331, 335 (1st Cir.2008)(internal citations omitted); *Kepner–Tregoe*, 79 F.Supp.2d at 486.

dant's activities and to promptly bring suit. Since the plaintiff did not, its claim was barred.

Like in *Kepner–Tregoe*, Plaintiffs in the instant controversy had actual knowledge that VI Music, previously infringed on their rights to the Copyrighted Work. (Docket No. 1–4). In fact, after filing an action against Defendants, Plaintiff and VI Music entered into the Agreement resolving the action. (*Id.*; Docket No. 1, ¶ 21). Here, as in *Kepner–Tregoe*, a reasonable person in Plaintiff's shoes charged with a duty of diligence should have been paying attention to Defendants' activities relating to the Copyrighted Work once VI Music infringed on the Copyrighted Work. Therefore, a reasonable person would have known of Defendants' alleged copyright infringement when the initial infringement took place.

The fact that the defendant in *Kepner–Tregoe* invoked the laches doctrine, whereas Defendants base their motion on the statute of limitations is inapposite. Under the laches doctrine, "the duty to bring an action for copyright infringement does not arise ... until the plaintiff knows of the infringement." *Kepner–Tregoe*, 79 F.Supp.2d at 486. Similarly, in determining when a claim accrues under the Copyright Act's three (3) year statute of limitations, a court analyzes when the plaintiff "knows or has reason to know of the act which is the basis for the claim." *Cambridge Literary Props.*, 510 F.3d at 88 (quoting *Santa–Rosa*, 471 F.3d at 227). Thus, the Court's present analysis, whether Plaintiff knew or had reason to know of Defendant's alleged copyright infringement more than three (3) years prior to filing suit, is substantially similar to the *Kepner–Tregoe* court's laches analysis.

Moreover, a reasonable person in Plaintiff's shoes charged with a duty of diligence would have discovered the alleged

copyright infringement when Fiebre de Reggaeton and Reggaeton Latino were released and distributed and The Last Don and The Last Don Live were released and distributed in a manner exceeding the scope of the November License and the April License. *See Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458, 465–66 (S.D.N.Y.1999); *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1338 (Fed.Cir.1998)("constructive knowledge of the infringement may be imputed to the patentee even where he has no actual knowledge of the sales, marketing, publication, public use, or other conspicuous activities of potential infringement if these activities are sufficiently prevalent in the inventor's field of endeavor."); *Amador v. McDonald's Corp.*, No. 07–1323, 2008 WL 5683885, at *11 (D.P.R. Dec. 5, 2008), *Report and Recommendation adopted in part, rejected in part by Amador v. McDonald's Corp.*, 601 F.Supp.2d 403 (D.P.R.2009)("As a practical matter, where a work has been publicly disseminated ... the copyright owner will be charged deemed to have been on constructive notice of the infringement."). In fact, according to Plaintiff, the album Reggaeton Latino, which the Copyrighted Work appears on, has sold over 500,000 units and digital downloads and The Last Don and the Last Don Live have sold millions of units and digital downloads and were certified multi-platinum. (Docket No. 1, ¶¶ 40–41). Thus, a reasonable person in Plaintiff's shoes would have discovered the alleged infringing conduct.

The instant case is distinguishable from *Warren Freedenfeld Assocs.*, 531 F.3d 38. In *Warren Freedenfeld Assocs.*, the defendant, a veterinarian, hired the plaintiff, an architectural firm, to design a veterinary hospital. *Warren Freedenfeld Assocs.*, 531 F.3d at 42. The plaintiff secured a copyright over the plans and drawings. *Id.* After their relationship deteriorated, the

parties signed a termination agreement wherein plaintiff agreed not to use plaintiff's plans in any subsequent work. *Id.* Four years later, the plaintiff came across the floor plan for the veterinary in a trade publication. *Id.* After obtaining a copy of the full plan from the city, plaintiff concluded that his copyright was infringed on and filed suit in federal court. *Id.* The District Court granted the defendants' motion for summary judgment because the statute of limitations expired. *Warren Freedenfeld Assocs.,* 531 F.3d at 43. The First Circuit Court of Appeals vacated the lower court's decision. *Warren Freedenfeld Assocs.,* 531 F.3d at 49. The court held that to be charged with inquiry notice, "there must be an event or series of events that comes to the attention of the aggrieved party." The First Circuit reasoned that prior to the chance discovery of the floor plans in the trade publication, there were no facts sufficient to alert a reasonable person to suspect that their copyrights were infringed upon. *Warren Freedenfeld Assocs.,* 531 F.3d at 45–47.

■ In the case at bar, unlike in *Warren Freedenfeld Assoc.,* there was a "triggering" event sufficient to put Plaintiff on notice of possible infringement: Plaintiff previously accused VI Music of infringing on their rights to the Copyrighted Work. Moreover, Fiebre de Reggaeton and Reggaeton Latino were released and distributed to the public and The Last Don and The Last Don Live were released in a manner violative of the November License and the April License. Thus, in the matter at bar, unlike in *Warren Freedenfeld Assoc.,* there was "smoke necessary to put [Plaintiff] on inquiry notice that a fire started." *Warren Freedenfeld Assocs.,* 531 F.3d at 45. The fact that the infringing acts may have occurred abroad is inapposite. Plaintiff argues that the only way it could have detected the alleged infringing acts is if they visited the countries where Fiebre de Reggaeton, Reggaeton Latino, The Last Don and The Last Don Live were released. (Docket No. 127, 17). Nevertheless, Plaintiff does not argue, and there is no indication, that Plaintiff acted with the requisite level of diligence, domestically or abroad. The discovery rule requires Plaintiff to be diligent. *Warren Freedenfeld Assocs.,* 531 F.3d at 44. The equitable tolling doctrine suspends the statute of limitations where a plaintiff is "unaware of the facts underlying his cause of action." *Ramirez–Carlo v. United States,* 496 F.3d 41, 48 (1st Cir.2007)(internal citations omitted). Yet, a party may not gain the benefit of the equitable tolling doctrine unless they act with diligence. *Donahue v. United States,* 634 F.3d 615, 629 (1st Cir.2011). Plaintiff failed to act with such diligence as required by both the discovery rule and the equitable tolling doctrine.

Accordingly, Defendants motion to dismiss (Docket No. 118) is **GRANTED in part and DENIED in part.** The statute of limitations accrued when Fiebre de Reggaeton and Reggaeton Latino were released and distributed and The Last Don and The Last Don Live were released and distributed in a manner exceeding the scope of the November License and the April License. Plaintiff's action for damages from alleged copyright infringement occurring within the three (3) years prior to commencing this action is timely. Plaintiff's action for damages from alleged copyright infringement occurring more than three (3) years prior to commencing this action are time-barred unless they are saved by the equitable estoppel doctrine.

**B. Summary Judgment: Equitable Estoppel**

Plaintiff invokes the doctrine of equitable estoppel to save its claims that were

brought after the statute of limitations expired. (Docket No. 142, pages 5, 17; Docket No. 127, page 17). The doctrine of equitable estoppel is unavailing.

### 1. The Summary Judgement Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico*, 110 F.3d 174, 179 (1st Cir.1997). "A fact is "material" where it has the potential to change the outcome of the suit under governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable inferences in that party's favor. Only if the record, viewed in this matter and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co.*, 116 F.3d at 959–60. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097 (quoting *Liberty Lobby*, 477 U.S. at 250–51, 106 S.Ct. 2505). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)("[F]indings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact.") *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir.2000)(finding that "determinations of motive and intent ... are questions better suited for the jury"). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena*, 95 F.3d at 95.

### 2. Analysis

■ Equitable estoppel precludes a defendant from raising the statute of limitations as an affirmative defense. *See Phelps v. Fed. Emergency Mgmt. Agency*, 785 F.2d 13, 16 (1st Cir.1986); *United States v. Great Am. Ins. Co.*, No. 05–2106, 2007 WL 3034363, at *2 (D.P.R. Oct. 15, 2007). The doctrine applies when a defendant causes a plaintiff, who is aware of his cause of action, not to commence an action in court. *Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 679 (1st

Cir.2011)(internal quotations and citations omitted). Equitable estoppel is only used in exceptional circumstances. *Romero–Villanueva v. P.R. Elec. Power Auth.*, 112 Fed.Appx. 74, 77 (1st Cir.2004)(internal citations and quotations omitted).

Plaintiff, as the party invoking the doctrine, has the burden of establishing three (3) elements: that (1) Defendants "made a definite misrepresentation of fact to another person having reason to believe that the other [would] rely upon it"; (2) Plaintiff "relied on the misrepresentations to its detriment"; and (3) Plaintiff's "reliance [was] reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Ramirez–Carlo*, 496 F.3d at 48–49 (internal citations and quotations omitted); *Kozikowski v. Toll Bros.*, 354 F.3d 16, 24 (1st Cir.2003).

Mere negotiations are insufficient to gain the benefit of the equitable estoppel doctrine. *Mercado v. Aviation Assocs., Inc.*, 974 F.2d 1329 (1st Cir.1992)(internal citations and quotations omitted). Plaintiff is still required to establish that "in offering to negotiate, or in actually negotiating, the defendants made representations which they knew or should have known would induce the plaintiff to delay bringing suit, and that the plaintiff in fact delayed filing suit in reliance on those representations." *Id.* (citing *Whitcomb v. Pension Development Co.*, 808 F.2d 167, 172 (1st Cir.1986)); *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir.1985)("[W]here the defendant assures the plaintiff that he intends to settle and the plaintiff, in reasonable reliance on that assurance, delays in bringing his suit until after the statute has run, the defendant may be estopped to rely on the limitations defense."). Plaintiff must show that Defendants "engaged in deceptive conduct or unfairly led appellant to believe that it intended to settle." *Kelley v. NLRB*, 79 F.3d 1238, 1248 (1st Cir.1996)(internal citations omitted).

Plaintiff argues that it was "lulled into not filing suit through a charade of numerous empty promises of payment and future compliance with a November 2005 agreement whose purpose was to buy enough time within which UMG could avoid litigation and raise a frivolous time-bar defense." (Docket No. 127, pages 15–16; Docket No. 142, pages 15–16). Plaintiff's equitable estoppel defense fails because the record does not indicate that Defendants made an affirmative misrepresentation of fact. *See Modern Office System, Inc. v. AIM Caribbean Exp., Inc.*, 802 F.Supp. 617, 623–24 (D.P.R.1992)(declining to apply the equitable estoppel doctrine because the plaintiff was unable to establish that the defendants made a misrepresentation during settlement negotiations).

A number of communications between the parties indicate that they were actively working to resolve Plaintiff's allegations prior to Plaintiff filing suit. (Docket No. 141, 6). According to Raul, sometime in 2006, Gustavo offered him to pay twenty-one (21) cents per copy to use the Copyrighted Work whereas Plaintiff suggested twenty-five (25) cents per copy in early 2007. (Docket No. 143–3; Docket No. 143, ¶ 15). Nearly two years later, after Raul expressed his frustration, Gustavo asked for Raul to give him a week to hold a conference call with Defendants' high-ranking officials. (Docket No. 143–10, 11; Docket No. 143, ¶ 9d). On the same day, Juarez told Raul that Defendants' delays were caused by Defendants' accounting department undergoing a "complete makeover [sic] ..." (Docket No. 143–12; Docket No. 143, ¶ 9e). Juarez suggested that once Raul received his accounting statements, they should compare them at the "accounting level" and pay any deficien-

cies. (Docket No. 143–12; Docket No. 143, ¶ 9e). After Dalmau suggested that Plaintiff would be willing to make a deal authorizing Defendants to use the Copyrighted Work in March of 2009, Juarez responded by asking if Plaintiff would consider a seventy percent (70%) royalty reduction for international sales. (Docket No. 143–15; Docket No. 143, ¶ 9j). On March 5, 2009, Raul noted that Juarez's original offer to pay $80,000 was reduced to $40,000 and that Juarez attempted to persuade Plaintiff to join their account with a separate corporation's account. (Docket No. 143, ¶¶ 9m-n). On March 10, 2009, after Raul wrote Juarez requesting her to send accurate information regarding royalties, Juarez told Raul that he needs to be more patient. (Docket No. 143–21). Although Raul and Dalmau met with Universal's legal representative, Gustavo, Juarez and Walter Kolm, a Universal representative, in March of 2009, Kolm avoided the issue. (Docket No. 143–3). According to Raul, Juarez promised to provide "all necessary paperwork, royalty statements, and an agreements [sic] that would resolve all issues." (*Id.*). However, a deal was never consummated.

The email exchanges between Plaintiff and Defendants, at best, evince an attempt to negotiate a resolution to their dispute. The fact that Plaintiff, rather than Defendants, initiated these negotiations suggests that Defendants did not lull Plaintiff into believing filing suit was unnecessary. *See Mercado*, 974 F.2d at 1329 (citing *Pfister v. Allied Corp.*, 539 F.Supp. 224, 227 (S.D.N.Y.1982)). Moreover, the communications do not indicate that Defendants misrepresented their intent to settle. *See Ramirez–Carlo*, 496 F.3d at 48–49. De-

fendants' emails to Plaintiff merely indicate Defendants' hope and desire to reach an accord. The record does not reflect that Defendants deceived Plaintiff by stating that they had, or were near certain to, reach a settlement. *See Id.; Sahar v. Am. Airlines*, No. 93–3878, 1993 WL 524245, at *3 (N.D.Ill. Dec. 10, 1993)(denying the plaintiff's equitable estoppel claim because, *inter alia*, the plaintiff did not misrepresent its intention to settle). Plaintiff has not demonstrated that Defendants made a material misrepresentation of fact; Defendants' communications merely evidence their hope and desire to settle the controversy. Hope and desire, without an affirmative misrepresentation of fact are insufficient to implicate the equitable estoppel doctrine.[16] To hold otherwise would remove the teeth from statutes of limitation and discourage settlement negotiations.

Even assuming, *arguendo*, Defendants' statements constitute misrepresentations, Plaintiff's reliance on Defendants' statements were unreasonable. As Defendants persuasively point out, Defendants did not affirmatively misrepresent to Plaintiff that their dispute was resolved or admit that Defendants owed Plaintiff money. (Docket No. 141, page 6). At no point does the record indicate that Defendants agreed to pay Plaintiff for Defendants' allegedly unlawful use of the Copyrighted Work. (Docket No. 141, page 6). Rather, the parties were still experimenting with potential solutions to their dispute. (Docket No. 143, ¶ 9m). Plaintiff and Defendants' negotiations were "incomplete, tentative, and unwritten" as to the specific amounts Defendants were willing to pay Defendants

---

**16.** Defendants' are not free from fault. Defendants' negotiated without urgency and were slow to respond to Plaintiff's requests for information. Defendants expressed the hope and desire to settle but offered few tangible solutions. Yet, a listless attitude toward settlement negotiations does not rise to the level of affirmative misconduct required to establish equitable estoppel.

as compensation. *See Sands v. Ridefilm Corp.*, 212 F.3d 657, 665 (1st Cir.2000).

The First Circuit has long since held that "a party may not successfully claim reliance on a misrepresentation when he ought to have known the truth." *Ross v. Comm'r of Internal Revenue*, 169 F.2d 483, 495 (1st Cir.1948)(internal citations omitted); *Benitez–Pons v. Commw. of P.R.*, 136 F.3d 54, 63 (1st Cir.1998)("If, at the time when he acted, such party had knowledge of the truth ... he cannot claim to have been misled by relying upon the misrepresentation ...") Plaintiff knew that the parties did not reach a full resolution to their disagreement and that Defendants appeared unwilling to settle their disagreement. Nearly two years after Plaintiff first confronted Defendants about their dispute and before the statute of limitations expired, Raul wrote to Juarez and Gustavo that Defendants' were not responding to their dispute with a "positive attitude" and were unwilling to resolve Defendants' alleged copyright violations. (Docket No. 143–10; Docket No. 143, ¶ 9d). Raul reiterated to Gustavo that although he tried to resolve the dispute amicably, Defendants had no intention of doing so and he is tired of waiting for Defendants to change their tune. (Docket No. 143–10). Thus, it was unreasonable for Plaintiff to rely on Defendants' statements when they had knowledge that Defendants were not eager to settle.[17] Plaintiff can not, and should not, gain the benefit of the equitable estoppel doctrine when they knew that Defendants were

largely unresponsive to Plaintiff's overtures to resolve their disagreement. *Id.*

Furthermore, the record reflects that Plaintiff's and Defendants' negotiations ceased on March 25, 2009. (Docket No. 143, ¶ 32; Docket No. 143–20). Yet, Plaintiff filed suit on December 18, 2009, nearly nine (9) months later. (Docket No. 1). As the statute of limitations continued to run, Plaintiff should have commenced the instant action promptly to minimize any preclusive effect of the statute of limitations on their claim. Instead, Plaintiff sat on its rights. *See Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir.2003)(holding that the defendants were not equitably estopped from asserting the statute of limitations as an affirmative defense because the plaintiff did not comply with the statute of limitations for a year and a half after the defendants may have induced the plaintiff to delay bringing suit.). "Equity ... ministers to the vigilant, not to those who slumber upon their rights." *Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 87 (1st Cir.1990). Assuming Plaintiff will be successful on the merits, if Plaintiff filed suit in March of 2009, when the negotiations stalled, Plaintiff may have been able to recover for each of Defendants' infringing acts. Although, neither Plaintiff nor Defendants state when Fiebre de Reggaeton and Reggaeton Latino were released and distributed or when The Last Don and The Last Don Live were released and distributed in a manner exceeding the scope of the November License and the April License, Plaintiff would have been able to recover, at minimum, for Defendants' al-

---

**17.** The Court notes that Plaintiff's delay is especially unreasonable in light of Plaintiff's and Defendants' prior dealings. Plaintiff previously filed an action against non-party VI Music, a joint venture involving Defendant UMG Records. (Docket No. 1–4; Docket No. 107, page 5). Only after Plaintiff filed this prior action, were the parties able to settle their dispute. (*Id.*) Thus, since Plaintiff re-

quired court intervention to settle a previous grievance with Defendants, it would seem reasonable for a prudent actor in Plaintiff's shoes to seek a similar resolution in the present controversy. Nevertheless, the Court stresses that it merely notes Plaintiff's and Defendants' prior litigation history and that such history has little bearing on the Court's determination herein.

leged infringing acts since March of 2006. 17 U.S.C. § 507(b). However, Plaintiff did not diligently assert its rights in court and thus force Defendants to face the music.

Public policy considerations suggest that parties should be encouraged to settle prior to turning to the Court for assistance. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994)("[P]ublic policy wisely encourages settlements ..."); *Kelley*, 79 F.3d at 1248. Plaintiff attempted to settle their grievance prior to filing suit. Yet, Plaintiff was free to cut-off settlement negotiations at anytime. The statute of limitations is designed to "prevent[ ] plaintiffs from sleeping on their rights and [to] prohibit[ ] the prosecution of stale claims." *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 141–42 (1st Cir.2005)(quoting *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir.2003)). Having chosen not to enforce their rights in court, Plaintiff "cannot reasonably expect us now to cure the defects in ... [its] settlement strategy." *Kelley*, 79 F.3d at 1248.

Accordingly, Plaintiff is not afforded the shelter of the equitable estoppel doctrine. Plaintiff's converted motion for summary judgment (Docket No. 127) is hereby **DENIED** and Defendants' counter-motion for patrial summary judgment (Docket No. 141) is hereby **GRANTED**.

### III. Conclusion

For the reasons stated above, Defendants' motion to dismiss (Docket No. 118) is hereby **GRANTED in part and DENIED in part.** Defendants' counter-motion for partial summary judgment (Docket No. 141) is hereby **GRANTED**. Plaintiff's converted motion for summary judgment (Docket No. 127) is hereby **DENIED.**

In short, Plaintiff's action for damages from alleged copyright infringement occurring within the three (3) years prior to commencing this action is timely. As Plaintiff is not entitled to gain the benefit of the equitable estoppel doctrine, Plaintiff's action for damages from alleged copyright infringement occurring more than three (3) years prior to commencing this action are time-barred.

**IT IS SO ORDERED.**